In re SALEM SUEDE, INC., Debtor.

FOREIGN CAR CENTER, INC., Stefano Picciotto, Judith Picciotto, Juan B. Nunez, and Jose B. Ferreras, Plaintiffs,

v.

SALEM SUEDE, INC., Zion Realty Corporation, The Travelers Insurance Company, and The Travelers Indemnity Company, Defendants.

SALEM SUEDE, INC., Appellant,

v.

TRAVELERS INDEMNITY
CO., Appellee.

In re ZION REALTY CORPORATION,
Debtor.

FOREIGN CAR CENTER, INC., Stefano Picciotto, Judith Picciotto, Juan B. Nunez, and Jose B. Ferreras, Plaintiffs,

v.

The TRAVELERS INSURANCE COMPANY, Salem Suede, Inc., and Zion Realty Corporation, Defendants.

The TRAVELERS INDEMNITY
COMPANY, Plaintiff,

v.

SALEM SUEDE, INC., and Zion Realty Corporation, Cross–Claim Defendants and Cross–Claim Plaintiffs.

ZION REALTY CORPORATION,
Appellant,

v.

TRAVELERS INDEMNITY
CO., Appellee.

In re SALEM SUEDE, INC., Debtor.

FOREIGN CAR CENTER, INC., Stefano Picciotto, Judith Picciotto, Juan B. Nunez, and Jose B. Ferreras, Plaintiffs,

v.

The TRAVELERS INDEMNITY COMPANY, Salem Suede, Inc., and Zion Realty Corporation, Defendants.

TRAVELERS INDEMNITY
CO., Appellant,

v.

FOREIGN CAR CENTER, INC., Stefano Picciotto, Judith Picciotto, Juan Nunez, and Jose Ferreras, Appellees.

IN RE SALEM SUEDE, INC., Debtor.

FOREIGN CAR CENTER, INC., Stefano Picciotto, Judith Picciotto, and Juan B. Nunez, Plaintiffs,

v.

The TRAVELERS INSURANCE COMPANY, Salem Suede, Inc., and Zion Realty Corporation, Defendants.

The TRAVELERS INDEMNITY COMPANY, Cross–Claimant and Cross–Claim Defendant,

v.

SALEM SUEDE, INC., and Zion Realty Corporation, Cross–Claim Defendants and Cross–Claimant.

Stefano PICCIOTTO, Judith Picciotto,
Foreign Car Center, Inc., and
Juan Nunez, Appellants,

v.

TRAVELERS INDEMNITY
CO., Appellee.

No. 96–13184–JNF.
Adversary No. 96–1298.
Civ.A. Nos. 97–12587–REK
to 97–12590–REK.

United States District Court,
D. Massachusetts.

June 24, 1998.

Stephen F. Gordon, Gordon & Wise, Boston, MA, for Salem Suede, Inc.

Frank J. Ciano, Cambridge, MA, Amy J. Rosengarten, Law Office of Frank J. Ciano, Cambridge, MA, Stephen F. Gordon, Gordon & Wise, Boston, MA, for Salem Suede, Inc.

Mary A. Dowd, M. Ellen Carpenter, Kern, Hagerty, Roach & Carpenter, Boston, MA, for Zion Realty Corporation Consolidated.

Timothy M. Hughes, Shafner, Gilleran & Mortensen, P.C., Edwin A. McCabe, Philip Y. Brown, Larry R. Tipton, McCabe Brown, Joel Z. Eigerman, Roche, Carens & DeGiacomo, P.C., Michael C. Gilleran, Pepe & Hazard, L.L.P., Boston, MA, for Foreign Car

Center, Inc., Stefano Picciotto, Judith Picciotto and Juan Nunez.

Timothy M. Hughes, Shafner, Gilleran & Mortensen, Joel Z. Eigerman, Roche, Carens & DeGiacomo, P.C., Michael C. Gilleran, Pepe & Hazard, L.L.P., Boston, MA, for Jose Ferreras.

John A. Nadas, Choate, Hall & Stewart, Boston, MA, for Travelers Indemnity Co.

### Opinion

KEETON, District Judge.

This consolidated proceeding in the district court in relation to bankruptcy matters presents issues regarding the effect of purported notices of interlocutory appeal and various requests for leave to proceed on interlocutory appeal from different orders of the bankruptcy court in the adversary proceeding identified in the various parts of the caption, above. In this court, the attempted appeals have been consolidated because some of them, at least, and perhaps all of them, present "similar issues from a common record" in bankruptcy, as that phrase is used in D.Mass.L.R. 203(E).

For reasons explained in this Opinion, the bankruptcy court was correct in denying summary judgment, but this court's reasoning is somewhat different and leads also to disposition of all of these consolidated appeals, except that of Travelers, by denial of leave for interlocutory appeal. Travelers' appeal succeeds in part in that, even though affirming the denial of Travelers' motion for summary judgment, this court does so on reasoning different from that of the bankruptcy court. This court also vacates the bankruptcy court's "conclusive determinations" with respect to claims asserted against Travelers under Mass.Gen.L. chs. 93A and 176D, and remands the case to the bankruptcy court for disposition of those claims in a manner consistent with this opinion.

### I. Procedural and Factual Background

The consolidated appeals arise from the following sequence of events and rulings:

*1970.* Salem Suede, Inc. (the Debtor) opens a leather processing plant and tannery in Peabody, Massachusetts.

*December 5, 1978.* Travelers Indemnity Co. (Travelers) issues a Comprehensive General Liability Policy No. 650–115B130–1–IND–78 to "Salem Suede, Inc., Massachusetts Split, Inc., Zion Realty Corp., Zion Realty Trust, Alan R. Zion, Trustee." Docket No. 38, Exh. 2 at TR–3–0547 (the 1979 CGL Policy). Zion Realty Trust is the entity that owns the property on which Salem Suede's tannery is located in Peabody. The policy provides coverage for occurrences from December 1, 1978 to December 1, 1979. *Id.* The policy contains an exclusion from "COVERAGE A—BODILY INJURY LIABILITY" and "COVERAGE B—PROPERTY DAMAGE LIABILITY" that states:

EXCLUSIONS—This insurance does not apply:

> (f)(1) to bodily injury or property damage arising out of any emission, discharge, seepage, release or escape of any liquid, solid, gaseous or thermal waste or pollutant
>
> (i) if such emission, discharge, seepage, release or escape is either expected or intended from the standpoint of any insured or any person or organization for whose acts or omissions any Insured is liable, or
>
> (ii) resulting from or contributed to by any condition in violation of or non-compliance with any governmental rule, regulation or a law applicable thereto....

Docket No. 38 at TR–3–0598 (the Pollution Exclusion).

*Last months of 1979.* Mr. Picciotto, the owner of Foreign Car Care Center (FCC) complains to the Massachusetts Department of Environmental Quality Engineering (the DEQE) about odors and particulates emanating from the smokestack of Salem Suede's tannery. FCC is located in a lot adjacent to Salem Suede's tannery.

*December 3, 1979.* The DEQE issues Notice of Violation against Salem Suede on the basis of Picciotto's complaint and an agent's observation of "a white particulate all over the rear of his [Picciotto's] building." Docket No. 36, Exh. 1.

*December 19, 1979.* Travelers issues a Comprehensive General Liability Policy No. 650–115B130–1–IND–78 to "Salem Suede, Inc., Massachusetts Split, Inc., Zion Realty Corp., Zion Realty Trust, Alan R. Zion, Trustee." Docket No. 38, Exh. 3 at TR–3–0611 (the 1980 CGL Policy). The policy provides coverage for occurrences from December 1, 1979 to December 1, 1980. *Id.* The policy contains the same exclusion quoted above applying to the same types of coverage. *Id.* at TR–3–0670.

*1980.* The DEQE issues at least three Notices of Violation against Salem Suede. Docket No. 36, Exhs. 2–4.

*September 17, 1980.* Travelers issues a Comprehensive General Liability Policy No. 650–115B130–1–IND–80 to "Salem Suede, Inc., Massachusetts Split, Inc., Zion Realty Corp., Casper–Salem Corp., Zion Realty Trust, Alan R. Zion, Trustee Atima." Docket No. 38, Exh. 4 at TR–3–0692 (the 1981 CGL Policy). The policy provides coverage for occurrences from July 1, 1980 to July 1, 1981. *Id.* The policy contains the same exclusion quoted above applying to the same types of coverage. *Id.* at TR–3–0747.

*June 1, 1982.* Salem Suede sends letter to DEQE reporting that:

> Our initial attempt to reduce particulate emissions by using a fabric filter on the outlet of our dust collector has proven relatively effective ... A study is being made of our odor problem and recommendations for reducing this problem will be available by the end of July 1982.

Docket No. 36, Exh. 5.

*March 1, 1983.* The DEQE issues a Notice of Violation against Salem Suede. Docket No. 36, Exh. 7.

*March 24, 1983.* FCC, Stefano Picciotto, Judith Picciotto, Juan B. Nunez, and Jose B. Ferreras (the Judgment Creditors) file a complaint to initiate Civil Action No. 83–740 in Essex Superior Court (Superior Court Civil Action No. 83–740) seeking damages for personal injuries and property damage caused by emissions from Salem Suede's tannery. ·

*March 31, 1983.* The president of Salem Suede sends a letter to Columbia Insurance Agency, Inc. (Columbia) to inform Columbia of Superior Court Civil Action No. 83–740.

*April 5, 1983.* An employee at Columbia forwards to Travelers a copy of the summons in Superior Court Civil Action No. 83–740 with a cover letter identifying Salem Suede as an insured of Travelers.

*April 13, 1983.* At a deposition for Civil Action No. 83–740, Mr. Picciotto described the emissions from Salem Suede's smokestack as occurring "on a daily basis" and requiring him to clean his cars "constantly." Docket No. 37, Exh. 1 at 51–52.

*April 15, 1983.* The DEQE issues another Notice of Violation against Salem Suede. Docket No. 36, Exh. 10.

*April 27, 1983.* In a memorandum to files, an employee of Travelers describes her discussion with Salem Suede's counsel as part of her investigation of the claim forwarded to Travelers by Columbia. The memorandum summarizes, in very general terms, some basic aspects of Salem Suede's business at the time and of the complained-of emissions.

*May 12, 1983.* In a memorandum to files, an employee of Travelers describes her discussion with counsel for the Judgment Creditors in Superior Court Civil Action No. 83–740.

*May 13, 1983.* The DEQE issues another Notice of Violation. Docket No. 36, Exh. 14.

*May 14, 1983 – September 28, 1993 (A ten year period).* During this 10–year period, the Superior Court case filed in March 1983 was proceeding toward final judgment. In this period, no other events are asserted in contentions before this court to have had significance in relation to the dispute over insurance coverage that is the subject of the attempted appeals from the bankruptcy court's orders.

*September 29, 1993.* The Superior Court in Civil Action No. 83–740 orders judgment for the Judgment Creditors. The judgment was for a total of $580,818, plus interest. Of this amount, the jury awarded $386,680 to Mr. Nunez, $154,138 to

FCC, $20,000 to Mr. Picciotto, $12,500 to Mrs. Picciotto, and $7,500 to Mr. Ferreras.

*December 18, 1993.* Mr. Picciotto sends a letter to Robert Reuter, a claims manager at Travelers, notifying Travelers of the judgment in Superior Court Civil Action No. 83–740 and inquiring as to whether Travelers had insured Salem Suede, Inc. between 1979 and 1987.

*February 1, 1994.* Travelers communicates to Mr. Picciotto that Travelers had no record of Salem Suede's having filed a claim in connection with Superior Court Civil Action No. 83–740. .

*March 10, 1995.* Travelers communicates to Salem Suede's counsel that Travelers had no record of Salem Suede filing a claim in connection with Superior Court Civil Action No. 83–740.

*February 1996.* The Massachusetts Appeals Court affirms the judgment of the Superior Court in Civil Action No. 83–740.

*March 21, 1996.* Debtors send a demand letter, pursuant to Mass.Gen.L. chs. 93A and 176D, to Travelers.

*April 16, 1996.* Travelers discovers in its files a copy of Salem Suede's notice of claim submitted by Columbia with respect to Superior Court Civil Action No. 83–740.

*April 29, 1996.* The Judgment Creditors file a complaint in Massachusetts Superior Court against Salem Suede, Zion Realty, and Travelers. The complaint initiates Superior Court Civil Action No. 96–0870. The Judgment Creditors ask the superior court to:

(1) order Travelers to pay the judgment in Superior Court Civil Action No. 83–740 because of coverage under the 1979, 1980 and 1981 CGL Policies;

(2) order Travelers to pay the Judgment Creditors the cost of the defense in Superior Court Civil Action No. 83–740 because of their failure to defend;

(3) treble under Mass.Gen.L. chs. 93A and 176D the damages in Civil Action No. 83–740 and award to the Judgment Creditors the attorney's fees incurred by the Debtors in that action;

(4) treble under Mass.Gen.L. chs. 93A and 176D the expenses incurred by the Debtors in their bankruptcy proceedings and award those damages to the Judgment Creditors in satisfaction of the judgment in Civil Action No. 83–740; and

(5) "treble the final judgments together with accrued interest to the time of satisfaction and order that the defendant pay this sum to [the Judgment Creditors] to satisfy their judgment under Civil Action No. 83–740" because Travelers violated Chapters 93A and 176D. Docket No. 29 at 76A.

*April 30, 1996.* Salem Suede files a voluntary Chapter 11 petition. Salem Suede remains as debtor-in-possession.

*May 31, 1996.* Travelers files Answer and Cross Claim to the complaint in Civil Action No. 96–0870. In its cross-claim, Travelers asks the court to declare:

that the insurance contracts ... do not obligate Travelers to defend or indemnify the policyholders [the Debtors] with respect to any of the environmental claims at issue, and that Travelers is not liable to the policyholders [the Debtors] with respect to any of the environmental claims at issue, and that Travelers is not liable to the policyholders for defense costs or indemnification costs with respect to any of the environmental claims at issue.

Docket No. 29 at 14.

*June 11, 1996.* Salem Suede files a Notice of Removal of Civil Action 96–0870 to federal bankruptcy court. This Notice of Removal commences Adversary Proceeding No. 96–1298.

*June 24, 1996.* Zion Realty files a voluntary Chapter 7 petition. Zion Realty owns the property from which Salem Suede operates its tannery in Salem, Massachusetts.

*July 9, 1996.* The bankruptcy court denies Travelers' motion to remand Adversary Proceeding No. 96–1298 to Superior Court.

*August 22, 1996.* The bankruptcy court grants Zion Realty's motion to convert Chapter 7 proceedings to Chapter 11.

*December 21, 1996.* Mr. Nunez sends for the first time a Chapter 93A demand letter to Travelers.

*April 10, 1997.* Travelers, Salem Suede, and the Judgment Creditors move for summary judgment in Adversary Proceeding No. 96–1298:

(a) *Travelers' Motion for Summary Judgment on Cross–Claims Asserted by Salem Suede, Inc.* Travelers moves for summary judgment against Salem Suede's cross-claims on the following grounds:

(1) No coverage applies because of the Pollution Exclusion in the 1979, 1980 and 1981 CGL Policies; and

(2) The 93A cross-claims are "time-barred, factually unsupported, or otherwise invalid." Docket No. 35, Exh. 47 at 1–2.

(b) *Motion of the Travelers Indemnity Company for Summary Judgment on Foreign Car Plaintiffs' Claims.* Travelers moves for summary judgment on all claims asserted by the Judgment Creditors on the ground that the Judgment Creditors' claims "purportedly arising under M.G.L. ch. 93A §§ 9 and 11 are time-barred, procedurally defective, factually unsupported or otherwise invalid as a matter of law." Docket No. 35, Exh. 48 at 1.

(c) *Judgment Creditors' Motion for Partial Summary Judgment.* The judgment creditors move for partial summary judgment, asking that the court:

(1) Determine that Salem Suede and Zion Realty are entitled to coverage for the claims of Foreign Car Center, Stefano Picciotto, Judith Picciotto and Juan Nunez under the personal injury provisions of the insurance policies of Zion Realty and Salem Suede with Travelers for the years 1978, 1979, and 1980.

(2) Award judgment to Foreign Car Center, Stefano Picciotto, Judith Picciotto, and Juan Nunez permitting them to reach and apply the claims of Salem Suede and Zion Realty for personal injury coverage under the personal injury provisions of the insurance policies of Zion Realty and Salem Suede with Travelers for the years 1978, 1979, and 1980....

Docket No. 35, Exh. 50 at 2.

(d) *Salem Suede, Inc.'s Motion for Summary Judgment.* Salem Suede moves for summary judgment against Travelers and against the Judgment Creditors on the following grounds:

(1) Travelers did not comply with its duty to defend Salem Suede under the 1979, 1980, and 1981 CGL Policies;

(2) Travelers did not comply with its duty to indemnify Salem Suede;

(3) In failing to comply with these duties, Travelers violated Mass.Gen.L. chs. 93A and 176D; and

(4) the Judgment Creditors are estopped from "reaching and applying" any judgment for Salem Suede because they have failed to mitigate damages, having had the opportunity to settle their claims.

Docket No. 29 at 110A–134A.

*June 23, 1997.* Mr. Ferreras, as a plaintiff in the Adversary Proceeding, files Ex–Parte Motion for Compromise of Controversy, seeking his dismissal from the proceeding.

*July 2, 1997.* Parties stipulate to the dismissal of Mr. Ferreras from the Adversary Proceeding.

*October 10, 1997.* United States Bankruptcy Judge Joan N. Feeney orders that:

In accordance with the Memorandum dated October 10, 1997, the Motion of Judgment Creditors ... for Partial Summary Judgment is denied; Debtor Salem Suede, Inc.'s Motion for Summary Judgment is denied; the Motion of Travelers ... for Summary Judgment on Cross–Claims Asserted by Salem Suede, Inc. is allowed in part and denied in part; the Motion of Travelers ... Indemnity Company for Summary Judgment on Foreign Car Plaintiffs' Claims is allowed in part and denied in part; the Motion of Judgment Creditors to Amend 93A Claim is allowed.

Exh. to Salem Suede Inc.'s Motion for Leave to File Interlocutory Appeal, filed below on November 18, 1997.

*November 18, 1997.* The following events occur:

(1) Salem Suede, Inc. files in the bankruptcy court a Motion for Leave to File Interlocutory Appeal that commences Civil Action No. 97–12587–REK in this district court.

(2) Zion Realty files a Motion for Leave to File Interlocutory Appeal that commences Civil Action 97–12588–REK in this district court.

*November 20, 1997.* The following events occur:

(1) Travelers files a Motion for Leave to File Interlocutory Appeal that commences Civil Action No. 97–12589–REK in this district court.

(2) The Judgment Creditors file a Motion for Leave to Appeal from Interlocutory Order Dated October 10, 1997 that commences Civil Action 97–12590–REK in this district court.

*January 14, 1998.* This court ordered consolidation of Civil Action Nos. 97–12587–REK, 97–12588–REK, 97–12589–REK and 97–12590–REK for proceedings in this court.

## II. The Motions for Leave to Appeal

### A. Introduction

For the reasons explained below, I conclude that, as a discretionary matter, I will ALLOW the motion for leave to appeal filed by Travelers. Also for the reasons explained below, I conclude that it would not be an appropriate exercise of discretion to grant the motions for leave to appeal filed by the other parties.

Some preliminary premises about the nature of appeals generally are material to disposition of the matters before this court.

An appellate tribunal (including a United States district court when sitting on appeal in bankruptcy matters) ordinarily reviews judgments or orders, not opinions or reasoning. The appellate tribunal affirms an order, or reverses (or vacates) it. If it reverses or

vacates, ordinarily it does so with directions for further proceedings on remand. If the document purportedly appealed from is not entirely clear as to what the order is, obviously the appellate tribunal cannot properly affirm without being clear about why it does so and whether it remands for further proceedings.

In any event, and whether or not an order from which a party attempts to appeal is clear and precise, the appellate tribunal may vacate or modify the order, and remand with precise instructions as to what to do, or instead remand with instructions to proceed as the lower tribunal deems appropriate, within limits (if any) set by the appellate order of remand.

Two other possibilities that must be considered are: (1) that the appellate tribunal may not have jurisdiction to decide the purported appeal, and (2) that, even if the appellate tribunal has jurisdiction, it may have discretion to decline to exercise jurisdiction. If either of these possibilities is determined to exist in relation to any particular attempt to appeal from some particular order, the appellate tribunal may conclude that dismissal without addressing the merits is the most appropriate disposition of the attempted appeal.

Ordinarily, each of these various questions should be considered in relation to each of related appeals (or attempted appeals) independently. That is, a decision that it is appropriate to exercise jurisdiction and decide one matter ordinarily does not bring along with it supplemental jurisdiction to decide other matters.

### B. Threshold Questions of Jurisdiction Over Interlocutory Orders of the Bankruptcy Court

The statutory authorization for Local Rules regarding cases and proceedings under Title 11 of the United States Code is as follows:

Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11

shall be referred to the bankruptcy judges for the district.

28 U.S.C. § 157(a).

As generally understood, this is an authorization for "referr[al]" on stated terms and conditions, and those stated terms and conditions may include regulation of interlocutory appeals within a district, from an order of a bankruptcy court to a judge of the district court. *See, e.g., In re El San Juan Hotel,* 809 F.2d 151, 154 (1st Cir.1987) (handed down well after the effective date of § 157(a) quoted above). Section 157 was enacted in 1984 and amended in 1986.

Rule 201 of the Local Rules of the District Court for the District of Massachusetts is as follows:

> Pursuant to 28 U.S.C. § 157(a), any and all cases arising under Title 11 United States Code and any and all proceedings arising under Title 11 or arising in or related to a case under Title 11 shall be referred to the judges of the bankruptcy court for the District of Massachusetts.

D.Mass.L.R. 201 (effective January 2, 1995).

Rule 203, entitled "Bankruptcy Appeals," authorizes and directs the bankruptcy court to dismiss an untimely appeal, decide motions to extend deadlines, and consolidate appeals presenting similar issues from a common record. D.Mass.L.R. 203(A). These authorizations and directions do not "restrict the district court's discretion as to any aspect of any appeal." D.Mass.L.R. 203(E).

Rule 204 confirms the authority of "the judges of the bankruptcy court for the District of Massachusetts ... to make and amend rules of practice and procedure." D.Mass.L.R. 204 (effective August 1, 1997).

Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Massachusetts (effective August 1, 1997), include a Rule declaring that "District Court Local Rule 56.1 is adopted and made applicable to proceedings in the Bankruptcy Court." D.Mass.L.Bankr.R. 7056.1.

Neither the District Court's Local Rules nor the Bankruptcy Court's Local Rules explicitly prescribe guides for a district court's use in deciding whether to exercise discretion in favor of allowing leave for interlocutory appeal. In these circumstances, I conclude that the declarations in opinions of the Court of Appeals for the First Circuit handed down before August 1, 1997, the effective date of the Local Rules adopted under the statutory authorization that appears in 28 U.S.C. § 157(a), continue to be an appropriate source of authoritative guidance.

■ As declared in *El San Juan Hotel,* 809 F.2d at 153, under 28 U.S.C. § 157(a), even if a bankruptcy court order is not "final," a district court has discretion to allow an appeal from the order as an appeal from an interlocutory order.

■ Also, the district court has discretion to treat a Notice of Appeal as a motion for leave to appeal from a nonfinal order. The district court, however, before allowing leave, should determine whether the order is "surrounded by the finality or exceptional conditions" that would warrant intervention. *In re El San Juan Hotel,* 809 F.2d at 154.

■ The standard in the First Circuit for determining whether an order of a bankruptcy judge is a "final order" for purposes of appeal to a district court from a bankruptcy court views "finality" with more flexibility than in other civil litigation contexts. *In re American Colonial Broadcasting Corp.,* 758 F.2d 794, 801 (1st Cir.1985).

■ The standard for determining "finality" in the bankruptcy context requires a discrete dispute within the larger bankruptcy proceeding and involves an order that does "conclusively determine" the outcome of the litigation at least with respect to some "discrete dispute within the larger case." *Id. See also In re El San Juan Hotel,* 809 F.2d at 153; *In re Saco Local Development Corp.,* 711 F.2d 441, 444–46 (1st Cir.1983) (explaining historical development of the law regarding jurisdiction of Courts of Appeals of appeals from "*all* orders—both final and interlocutory—..."). The meaning of "discrete dispute" does not include a dispute over some element of a claim or defense that is not at the time of decision outcome-determinative because other yet undecided issues may make the order one that "does not finally determine a cause of action but only de-

cides some intervening matter pertaining to the cause, and which requires further steps to be taken in order to enable the court to adjudicate the causes on the merits." *In re American Colonial Broadcasting Corp.*, 758 F.2d at 801 (internal citations and question marks omitted).

In the absence of finality, this court must consider whether the exercise of appellate jurisdiction is, in this court's discretion, appropriate. Some courts in this Circuit, other than the Court of Appeals for the First Circuit, have stated that, although 28 U.S.C. § 158(a) "provides no express criteria to guide our discretion," those courts apply "the same standards as govern the propriety of district court's certification of interlocutory appeals to the circuit courts under § 1292(b)." *In re Bank of New England Corp.*, 218 B.R. 643, 652 (1st Cir. BAP 1998). Nevertheless, as at least one court has also stated, the analogy to that standard is "jurisprudential and not jurisdictional." *In re Williams*, 215 B.R. 289, 298 n. 6 (D.R.I.1997).

■ The discretion granted to the district courts under 28 U.S.C. § 158 is greater than the discretion, if any, under 28 U.S.C. § 1292(b). For example, appellate jurisdiction over certified questions lies in the appellate tribunal only when those "orders other than final judgments ... have a final and irreparable effect on the rights of the parties." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *See also In re Harrington*, 992 F.2d 3, 6 (1st Cir.1993) (same requirement of irreparable harm for mandamus and "collateral order" discretionary appellate jurisdiction). In contrast, neither the language of 28 U.S.C. § 158 nor any decision construing it prescribes a finding of irreparable effect. All directly applicable authority emphasizes discretion, even though it must be a guided and reasoned exercise of discretion.

■ For the same reasons, I also conclude that, assuming without deciding that the "collateral order doctrine" may provide an appropriate basis for appellate jurisdiction by a district court over the interlocutory orders of a bankruptcy court, *see In re Empresas Noroeste Inc.*, 806 F.2d 315, 317 (1st Cir.1986),

an independent ground for discretionary appellate jurisdiction exists for a district court under 28 U.S.C. § 158. *See Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (lack of ground for discretionary jurisdiction of Court of Appeals over nonfinal order of district court sitting as appellate tribunal in bankruptcy under 28 U.S.C. § 158 does not mean that Court of Appeals cannot exercise discretionary jurisdiction under 28 U.S.C. § 1292 as long as the conditions under this provision are met).

Is any order of the bankruptcy court, under consideration in this consolidated proceeding in this court, a "final" order? Does it conclusively determine any discrete and definable claim? If not, does the attempt to appeal from the order nevertheless qualify for leave to appeal from an interlocutory order? These are among the threshold questions in the present proceeding in this court.

### C. Nature of the Orders of the Bankruptcy Court Denying Summary Judgment

■ Ordinarily, a bankruptcy court's order denying a motion for summary judgment is not a final order. *See In re Empresas Noroeste, Inc.*, 806 F.2d at 317 (denial of motion to dismiss not final because it merely allowed case to proceed toward trial). The order is an explicit refusal by the bankruptcy judge to make a dispositive ruling because of the failure of the moving party to meet its burden of showing entitlement to the order requested.

This characteristic of each of the orders denying a motion for summary judgment weighs heavily against this court's exercising discretion to grant leave for interlocutory appeal.

Of course, this court must examine other factors as well rather than denying leave for interlocutory appeal on this ground alone. For example, if this court's consideration of the various submissions of the parties bearing upon a particular one among the motions for summary judgment were to persuade this court that the bankruptcy court was without doubt in error in not granting that motion, then as to that motion that circumstance

would weigh heavily in favor of allowing leave for interlocutory appeal from the order denying that motion. That circumstance regarding one motion, however, would have little if any weight as bearing on any other motion among the whole array of motions under consideration.

### III. Travelers' Motion for Leave to Appeal

#### A. Narrow Tailoring

For the reasons explained below, I conclude that adequate grounds support this court's exercise of its discretionary appellate jurisdiction over certain of the interlocutory determinations made by the bankruptcy court in the adversary proceeding below. Of all of the motions for leave to appeal pending before this court in these consolidated appeals, Travelers' motion is the only one that, at least in part, narrowly tailors the scope of the identified determinations of the bankruptcy court and presents them for appeal in a manner that allows this court to exercise jurisdiction under the applicable principles governing this court's discretion.

#### B. Travelers Contentions

Travelers contends that this court should grant appellate review because the bankruptcy court made the following errors of law:

(1) the bankruptcy court determined that a genuine dispute of material fact remained as to whether the Pollution Exclusion in the 1979, 1980 and 1981 CGL Policies excluded from coverage damages resulting from the occurrences on which the judgment in Superior Court Civil Action No. 83–740 was based;

(2) the bankruptcy court determined that one of the Judgment Creditors, Juan Nunez, could pursue a claim against Travelers under Mass.Gen.L. ch. 93A despite his failure to send a timely pre-suit demand letter;

(3) the bankruptcy court determined that Travelers violated duties owed to the Judgment Creditors under Mass.Gen.L. chs. 93A and 176D without the judgment creditors having moved for that determination and without briefing; and

(4) The bankruptcy court "found" that Travelers' conduct violated a duty owed to Salem Suede under Mass.Gen.L. ch. 93A.

In requesting leave for appeal, Travelers suggests that although the contested determinations of the bankruptcy court are "technically interlocutory," the contested determinations and the resulting Order are the "final act [of the bankruptcy court] in the adversary proceeding" because the bankruptcy court must now transfer the case to the United States District Court for trial if these preliminary rulings are affirmed. Travelers thus contends that the procedural circumstance that the bankruptcy court must transfer the case to federal district court for trial is a relevant exceptional condition or consideration for this court's decision as to whether it should or should not exercise its discretion to grant appeal from an interlocutory order or determination of the bankruptcy court.

Travelers asks, on its attempted appeal to this court, that this court:

(1) reverse that part of the bankruptcy court's Order "affirming in part and denying in part" its two notions for summary judgment described in Part I above;

(2) reverse a "ruling" of the bankruptcy court (of unclear character) that Travelers contends determines that Travelers violated Mass.Gen.L. chs. 93A and 176D;

(3) order summary judgment for Travelers on its cross-claim against Salem Suede for declaratory relief;

(4) order summary judgment against the Judgment Creditors on their claims against Travelers; and

(5) order summary judgment against Salem Suede and Zion Realty on their cross-claims against Travelers.

### IV. Ambiguity of the Bankruptcy Court Order

#### A. Introduction

The terms of the Order that contains the rulings on the motions for summary judgment from which all parties seek leave to appeal are described in Part I above. The "order," as I use the term here is distinct from the reasoning that appears in the associated Memorandum. The terms of the Or-

der alone are ambiguous with respect to the denial "in part" of Travelers' motions for summary judgment because the Order itself does not specify what part or parts of those motions the bankruptcy court allowed and what part or parts of those motions the bankruptcy court denied. In deciding whether to grant leave to appeal, this court is thus put in the position of having to decipher from the bankruptcy court's Memorandum of October 10 that accompanied the Order what exactly was the *ruling* of the bankruptcy court, as well as what were the reasons for the ruling, with respect to each particular part of Travelers' motions for summary judgment.

The lack of clarity of the bankruptcy court's Order is further aggravated by the terminology that the bankruptcy court used in its Memorandum. The bankruptcy court did not clearly distinguish among:

(1) conclusions of law on decisive issues,

(2) conclusions of law on nondecisive issues,

(3) any mixed factual-legal determinations, and

(4) "findings" that could be either:

(A) determinations of disputed questions of fact (the making of which would be erroneous as a matter of law at the summary judgment stage), or

(B) determinations with respect to whether a dispute of fact remains after the record is fully considered.

Because of the restraint and caution this court must exercise in deciding whether to grant leave for interlocutory appeal, an inquiry into what the bankruptcy court ordered is essential to deciding whether to grant leave to appeal a particular interlocutory "order" or a determination that is an implicit component of that "order."

The bankruptcy court's lack of clarity in its order is significant for another reason in this case. One of the undetermined issues is whether the Adversary Proceeding must be transferred to a district judge if any party demands and is entitled to a jury trial. This circumstance weighs in favor of granting leave for appeal so a decision may be reached as soon as is possible as to which tribunal will be the forum of first instance for what claim. To the extent that this district court, on appellate review, can significantly clarify and purify rulings of law at the summary judgment stage, the interests of all parties and the public will be served. Also, thoroughly clarified rulings of law would better define what genuine disputes of material fact remain for the finder of fact to decide at trial.

### B. Ambiguity of Determinations with Respect to Claims under Chapters 93A and 176D

Travelers moved for summary judgment on all claims against it asserted by either the Judgment Creditors or the Debtors under Mass.Gen.L. chs. 93A and 176D. Travelers based its motion on two contentions: (1) One of the Judgment Creditors, Mr. Nunez, failed to send a pre-suit ch. 93A demand letter, and (2) Travelers did not violate, as a matter of law, chs. 93A and 176D because, assuming coverage was precluded by the Pollution Exclusion, Travelers owed no duties to the Debtors and the Judgment Creditors.

Salem Suede and Zion Realty moved for summary judgment on their claims against Travelers under ch. 93A and 176D. The bankruptcy court denied their motion for summary judgment.

The Judgment Creditors did not move for summary judgment on their claims under chs. 93A and 176D.

Although the bankruptcy court denied Salem Suede's motion for summary judgment, Travelers contends that the bankruptcy court made several rulings, despite the Order denying Salem Suede's motion, that constituted a determination that Travelers violated duties that it owed to Salem Suede under ch. 93A.

The bankruptcy court stated in part:

Because the issue of coverage has yet to be determined, the Court *finds* Travelers violated MASS.GEN.L. c. 93A by repeatedly misrepresenting a pertinent fact, namely the receipt of timely notice of the Plaintiffs' claims, and that the Debtors' MASS. GEN.L. c. 93A claims arising out of its 1994–96 conduct are not barred by any applicable statute of limitation.

Memorandum of October 10 at 96 (emphasis added).

The bankruptcy court also decided that Travelers had violated several of its duties to the Judgment Creditors under both ch. 93A and ch. 176D, despite the Judgment Creditors having failed to move for summary judgment on those grounds. Memorandum of October 10 at 96–106.

Furthermore, the bankruptcy court did not explicitly declare that its determinations that Travelers violated chs. 93A and 176D were determinations that no genuine dispute of fact remained as to them. Instead, the bankruptcy court either said it was "finding" or determined (without stating whether or not it was deciding as a matter of law or as a matter of fact) that Travelers violated duties that Travelers owed to the Judgment Creditors or to Salem Suede.

### C. Finality of the Challenged Determinations

Ambiguity in the bankruptcy court's Order and the various rulings in its Memorandum of October 10 cloud this court's ability to determine the finality of one or another ruling.

■ One additional complexity is that the bankruptcy court's determination that genuine disputes of material fact remained as to whether the Pollution Exclusion precluded coverage is an interlocutory, not a final, order. As explained in Part II.C above, a denial of a motion for summary judgment is not ordinarily "final." When read together, the bankruptcy court's statements in the Order that Travelers' motions for summary judgment are denied in part and allowed in part, and the determination in the Memorandum of October 10 that a genuine dispute of material fact remains, as to the applicability of the Pollution Exclusion, do not support a determination by this court that the bankruptcy court has made any "final" determination on Travelers' contention that the Pollution Exclusion precludes coverage.

With respect to the rulings by the bankruptcy court on claims under chs. 93A and 176D, the bankruptcy court has not made any "orders" that give effect to the determi-

nation of those claims that Travelers challenges in its attempted appeal.

Nevertheless, one may reasonably understand the bankruptcy court's Memorandum and Order together as making determinations, with respect to claims of Salem Suede and the Judgment Creditors under chs. 93A and 176D, that "conclusively determined" that Travelers violated chs. 93A and 176D despite the court's not having made any "final order" or judgment on those claims. I conclude that those putative determinations have a ring of "finality," or an effect very close to finality, that warrants this court's exercise of its discretionary appellate jurisdiction, in the absence of a final order, to make clear that no final adjudication has been made on these matters.

### D. Exceptional Conditions

■ Even if none of the interlocutory determinations of the bankruptcy court that Travelers seeks to appeal had the requisite "finality," Travelers has shown to this court that exceptional conditions warrant the assertion of jurisdiction over some particular parts of the bankruptcy court's interlocutory order (or determination).

■ As explained in Part III.C immediately above, Travelers contends that the procedural circumstance that the bankruptcy court is not authorized to conduct the trial in this case before a jury and must transfer the case to the United States District Court for trial is a relevant exceptional condition or consideration that a court should take into account in deciding whether to assert its discretionary jurisdiction. At first glance, this contention seems to stand in contrast with the fact that the applicable rules of procedure make the transfer an ordinary, not exceptional, procedure. Nevertheless, the principles governing this court's discretion do not call for "exceptional" circumstances in the sense of "circumstances beyond the law." The standard of evaluation must be more flexible if the articulated goals of discretionary appellate jurisdiction over interlocutory appeals are to be achieved in each particular case and with respect to each challenged determination of the bankruptcy court.

The identification of genuine disputes of material fact in a potentially overinclusive manner, as the bankruptcy court has done in this case, may be an approach to case management that in some circumstances is compatible with the fair and efficient administration of justice. For example, when a decisionmaker is presented with closely debated legal questions, some of the possible answers to which may imply that a material factual dispute remains on the record, the decisionmaker may choose to be overinclusive provisionally in order to postpone decision of those legal questions because findings of fact at trial may moot one or another of those legal questions. *See Cooney Indus. Trucks. Inc. v. Toyota Motor Sales, U.S.A., Inc.,* 978 F.Supp. 391 (D.Mass.1997) (appeal pending). A hasty decision as a matter of law in the face of closely debated legal questions and disputed questions of fact is likely to lead to both unfair outcomes and unfair burdens of delay and expense because of appeals and retrials.

A somewhat different calculus applies when, as here, an appeal is already in progress, and the appellate tribunal is considering what choice to make. Here, the lack of clarity that would remain if this court declines to exercise appellate jurisdiction may weigh in favor of exercising jurisdiction and attempting to clarify. The weight of this factor is particularly heavy in this case because, not only the bankruptcy judge below will have her hands tied to an uncertain course but also other decisionmakers may have their hands tied by potentially confusing rulings of the bankruptcy court, and will not have the familiarity with the record before the bankruptcy judge to help identify, from the record as a whole before the bankruptcy court, what trialworthy issues of fact remain in the case.

### E. Leave to Appeal from Denial of Summary Judgment on Coverage Under the CGL Policies

For the reasons explained below, I conclude that this court should grant Travelers leave to appeal the bankruptcy court's determination that a genuine dispute of material fact remains as to whether the Pollution Ex-clusion precludes coverage under the 1979, 1980 and 1981 CGL Policies.

As all parties and the bankruptcy court agree, the applicability of the Pollution Exclusion to the damages awarded to the Judgment Creditors in Superior Court Civil Action No. 83–740 depends on the interpretation of the phrase "expected or intended" in the Pollution Exclusion.

Travelers contends that the Pollution Exclusion negates coverage with respect to bodily injury or property damage (the Judgment in Superior Court Civil Action No. 83–740 awarded damages for both) arising out of "emission, discharge, seepage, release or escape of any liquid, solid, gaseous or thermal waste or pollutant. . . ." The Judgment Creditors and Salem Suede contend that the Pollution Exclusion must be read narrowly against Travelers and that the manifested intentions of the parties to the insurance contract were that the word "waste" meant harmful waste.

Travelers' contentions on appeal are based on an assumption that the bankruptcy court determined that the language of the exclusion was ambiguous and that for this reason a genuine dispute of material fact remained. The Judgment Creditors and Salem Suede want this court to understand the bankruptcy court's determination, instead, as a holding that only harmful waste was "waste" for purposes of the Pollution Exclusion. One could also read the Memorandum of the bankruptcy court as determining that from the record before it, the bankruptcy court could not determine if *all* of the emissions causing harm to the Judgment Creditors were "expected or intended," or if one or another of those emissions was large enough to be harmful or was unexpected because it followed corrective action that was expected to be an effective solution to the problem.

These contrasting, yet plausible and supportable, interpretations of the bankruptcy court's determinations with respect to the Pollution Exclusion indicate to this court that a precise clarification, if achievable on review in this appeal, would contribute significantly to reduction of delay and expense incurred by all parties and the public in reaching disposition of this entire controversy. Al-

though the reduction of litigation alone is ordinarily not, by itself, an adequate ground on which to exercise discretionary appellate jurisdiction under 28 U.S.C. § 158(a), *see In re El San Juan Hotel*, 809 F.2d at 154, the bankruptcy court's lack of clarity, with respect to its reasons for determining that a genuine dispute of fact remains, creates a substantial risk that, after transfer to the district court for trial, the trial judge will have an inadequate basis for identifying the trialworthy issues of fact that remain for the finder of fact to determine. This additional consideration is a consideration that is unique to a bankruptcy context.

Furthermore, the relationships among claims of coverage and claims of violation of chs. 93A and 176D also call for a clarification of the bankruptcy court's determinations with respect to the Pollution Exclusion. One of Traveler's defenses to ch. 93A liability is that Travelers owed no duty to Salem Suede or the Judgment Creditors because no coverage existed if the Pollution Exclusion applied. Although the bankruptcy court did not make any "findings" with respect to that theory of ch. 93A violation, a determination with respect to either a coverage or 93A claim (by this court on appellate review or by the bankruptcy court on remand) is likely to have a potentially decisive effect upon determinations with respect to the other type of claim.

I conclude that, when taken all together, these considerations authorize this court's exercise of its discretionary appellate jurisdiction over the bankruptcy court's denial of Travelers' motions for summary judgment to the extent that the denial was based on the applicability of the Pollution Exclusion.

### F. Leave to Appeal from Determinations with Respect to Claims Under Chapters 93A and 176D

■ For the reasons explained below, I conclude also that the bankruptcy court's determinations with respect to the claims asserted by Salem Suede and the Judgment Creditors under Mass.Gen.L. chs. 93A and 176D, even if lacking "finality" because of their vagueness, call for this court's exercise of discretionary appellate jurisdiction.

Travelers has made adequately supported allegations that procedural deficiencies surrounding the bankruptcy court's decision of the these claims made the bankruptcy court's decision procedurally unfair. It appears from the record before this court that the bankruptcy court determined (and it is not clear on what basis) that Travelers violated duties that it owed to the Judgment Creditors under chs. 93A and 176D without the Judgment Creditors having moved for summary judgment on those counts. As a result, Travelers was not given a fair opportunity to oppose those determinations.

In addition, the determinations on claims under chs. 93A and 176D appear from the record to have been based on "findings" on mixed legal-factual evaluative issues that were genuinely disputable, despite grave doubt, under applicable law, that the bankruptcy court could properly act as a finder of fact in ruling as it did on these issues.

### V. This Court's Decision of Travelers' Appeal

### A. Standard of Decision in the Bankruptcy Court and in this Court

■ A bankruptcy court may not allow summary judgment for a party if a genuine dispute of material fact exists in the case. F.R.Civ.P. 56. When a district court exercises discretionary appellate jurisdiction over the decision of a bankruptcy court, the district court reviews the bankruptcy court's determination regarding summary judgment nondeferentially (commonly referred to as *de novo* review as distinguished from review for abuse of discretion). *See Wyner v. North American Specialty Ins. Co.*, 78 F.3d 752, 754 (1st Cir.1996).

Under the law of this circuit, a court (and I conclude this rule applies to a bankruptcy court as well as a district court, when deciding a motion for summary judgment) may use a two-phase process in deciding a motion for summary judgment. Under that process, the movant first has to make a preliminary showing that no issue of material fact remains, and then the nonmovant must "demonstrate, through specific facts, that a trialworthy issue remains." *Cadle Co. v. Hayes,*

116 F.3d 957, 960 (1st Cir.1997). After a preliminary showing by the moving party, the burden shifts to the nonmovant to "produce evidence which would be admissible at trial to make the requisite issue of material fact." *Fragoso v. Lopez*, 991 F.2d 878, 887 (1st Cir.1993). If the nonmovant is unable to proffer such evidence to the court, judgment as a matter of law may be ordered because the nonmovant has failed to show that a genuine dispute exists as to any material fact.

In reviewing the bankruptcy court's decision in which the bankruptcy court may have acted under the authority of the *Hayes* and *Fragoso* decisions, the district court reviews nondeferentially (*de novo*) as explained in *Wyner* in relation to issues of law, and for abuse of discretion in relation to whether the bankruptcy court abused discretion with respect to procedural issues such as notice and opportunity for a party opposing summary judgment to present admissible evidence to meet its burden. In other words, the district court reviews the bankruptcy court's decision under the same standards of review as those the Court of Appeals invokes in reviewing a district court's decision on a motion for summary judgment filed in the district court.

If a reviewing court determines, in its *de novo* review of issues of law, that the summary judgment granted below was appropriate for reasons different from those stated by the lower court, it is appropriate to order that the judgment be affirmed but with an explicit statement of its reasons for doing so.

If, on the other hand, the reviewing court determines that a genuine dispute of material fact remains as to each possible ground for summary judgment, the reviewing court must vacate the order allowing the motion for summary judgment and must vacate any final judgment entered by the clerk on the docket in accordance with the order. The appropriate disposition, in either event, may be to remand the case to the bankruptcy court with directions to conduct such further proceedings as it may deem appropriate, consistent with the opinion and order of the reviewing court.

## B. The Bankruptcy Court's Denial of Summary Judgment on the Pollution Exclusion

For the reasons stated below, I conclude that a genuine dispute of fact remains as to whether the Pollution Exclusion precludes coverage for the damages awarded to the Judgment Creditors in Superior Court Civil Action No. 83–740. Nevertheless, I expressly reject the reasoning of the bankruptcy court in reaching that determination. My purpose is to identify as clearly as possible, given the limited nature of the record before me, the trialworthy issues that remain.

The bankruptcy court denied Travelers' motions for summary judgment to the extent that Travelers sought a determination, as a matter of law, that the Pollution Exclusion precludes coverage. The bankruptcy court expressed the view that genuine disputes of material fact remain. More specifically, the bankruptcy court stated in the Memorandum that accompanied its Order:

Travelers has the burden of proving that the Debtor intended or expected emissions from which the Judgment Creditors' injuries arose. It is irrelevant whether the Debtor lacked the intent to cause harm or damage to the Judgment Creditors from its emissions. Evidence from the Essex Superior Court Action established, and the Judgment Creditors admit, that the Debtor expected or intended to emit at least low level pollutants. However, the jury's answers to the special questions established that the Judgment Creditors were injured by negligent emissions and the creation of a nuisance. Accordingly two issues emerge: 1) whether Travelers established that there are no genuine issues of material fact as to the cause of the Judgment Creditors' injuries; i.e., whether they arose solely out of intended or expected emissions; and 2) whether the finding that the Debtor was negligent in permitting the emissions precludes, on the existing record, a finding that the emissions were expected or intended. Because the existing record permits disparate inferences as to whether Salem Suede expected or intended emissions from which damages and personal injuries arose, and intent is normally a

question of fact, the Court must deny summary judgment to Travelers. Accordingly, the Court denies the summary judgment motions of all parties in interest to the extent that they seek a determination of Travelers' duty to indemnify based on the applicability of the pollution exclusion.

*Memorandum of October 10 at 73.*

To explain my conclusion that this reasoning in the bankruptcy court's Memorandum is not entirely correct, I note, first, a fundamental point about mixed legal-factual issues bearing on contract interpretation. This point applies to all kinds of contracts (including contracts for liability insurance coverage).

On the one hand, "it is for the court to determine whether the terms of an integrated agreement are unambiguous and, if so, to construe them according to plain meaning." *United States Liab. Ins. Co. v. Selman*, 70 F.3d 684, 687 (1st Cir.1995). Appellate review of such determinations is, accordingly, *de novo. See id.* On the other hand, "when the district court's answers rest not on plain meaning but on differential findings by a trier of fact, derived from extrinsic evidence as to the parties' intent with regard to an uncertain contract provision, appellate review proceeds under the clearly erroneous standard." *Id. See also ICC v. Holmes Transp., Inc.*, 983 F.2d 1122, 1126 (1st Cir.1993); *Gel Sys. Inc. v. Hyundai Eng'g & Constr. Co.*, 902 F.2d 1024, 1027 (1st Cir.1990).

*Servicios Comerciales Andinos, S.A. v. General Electric Del Caribe, Inc.*, 145 F.3d 463, 469 (1st Cir.1998). As is made clear later in the opinion, the phrase "parties' intent" refers not to unmanifested states of mind of the separate parties but to, in the idiom of the foreign law applicable in that case, "some outward sign of consent, some declaration of the common will of the parties." *Id.*, at 473 (applying Peruvian law). *See also Boston Gas Co. v. Department of Pub. Util.*, 368 Mass. 780, 788 n. 4, 336 N.E.2d 713, 718 (1975) (extrinsic evidence must "present an understanding of the parties which would aid in an interpretation of the agreement" in the event of ambiguity).

Appellate review of the Bankruptcy Judge's orders in this case begins with an examination of the text of the Pollution Exclusion. I conclude that the language of the Pollution Exclusion that includes "expected or intended" and "waste" is not shown by any evidence in the record before me to be ambiguous in any respect material to the outcome of the disputes in the Adversary Proceeding before the bankruptcy court. Potential ambiguity in immaterial respects is irrelevant to the decision of the Adversary Proceeding. *See, e.g., Donoghue v. IBC USA (Publications), Inc.*, 70 F.3d 206, 215 (1st Cir.1995) ("Clarity about some hypothetical issue not in dispute is irrelevant. Conversely a party claiming to benefit from ambiguity ... must show ambiguity in the meaning of the agreement with respect to the very issue in dispute. Demonstration of ambiguity in some respect not material to any existing dispute serves no useful purpose."). *See also Starr v. Fordham*, 420 Mass. 178, 190 n. 11, 648 N.E.2d 1261, 1269 n. 11 (1995) (any "determination of meaning or ambiguity should only be made in the light of the relevant evidence of the situation and the relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of the trade and the course of dealing between the parties"), quoting from Restatement (Second) of Contracts, § 212, Comment b (1981). No genuine dispute of fact, material to outcome, thus remains as to the meaning of "expected or intended" and "waste," and a decisionmaker does not need to consider extrinsic evidence to ascertain the manifested meaning of those terms as applied to the disputes before the bankruptcy court in the Adversary Proceeding.

Salem Suede's and the Judgment Creditors' contention that the Pollution Exclusion applies only to waste that causes a certain amount of harm to property or persons is not persuasive. The Pollution Exclusion refers to "waste," not "harmful waste." Unless the words in an insurance policy viewed as a whole are ambiguous, a court should "not look beyond the four corners of

the policy" but should read those words in their "usual and ordinary sense." *Somerset Savings Bank v. Chicago Title Ins. Co.*, 420 Mass. 422, 427, 429, 649 N.E.2d 1123, 1127–28 (1995). I conclude that the proposal to add words to the Pollution Exclusion that Salem Suede and the Judgment Creditors set forth in their submissions is not appropriate.

■■■ The meaning of "expected" in the Pollution Exclusion is properly interpreted to be consistent with its meaning in common usage. A court must interpret the terms of an insurance contract as having a meaning consistent with their meaning in ordinary usage unless the party seeking a different interpretation makes a showing that "peculiar or technical meaning is more appropriate." *Woogmaster v. Liverpool & London & Globe Ins. Co.*, 312 Mass. 479, 481, 45 N.E.2d 394, 395 (1942). In this case, at least some of the emissions by Salem Suede were indisputably expected because Salem Suede knew, during the period of coverage of the CGL Policies, that the emissions were occurring "on a daily basis," and took ongoing measures to reduce those emissions during that period.

■■■ Nevertheless, a genuine dispute of fact may remain as to whether the emission or emissions that caused some or all of the harm for which the Judgment Creditors received compensation in Superior Court Civil Action No. 83–740 were expected. The responses of the jury in that case to the special questions before them did not make findings as to whether the ongoing low-to-moderate expected emissions caused the harm, or, instead, the harm was caused solely by one or a few very intense bursts that could not have been expected by Salem Suede. For this reason, the remaining dispute of fact is less appropriately described as one of contract interpretation (which is usually a question of law) and is more in the nature of an issue of causation or connection. The evidence of record before this court shows that a genuine dispute of material fact remains as to what type of emission caused the harm, and the failure of the verdict in Superior Court Civil Action No. 83–740 to identify particular emissions or ongoing emissions as the cause of the harm for which the Judgment Creditors

were awarded damages stands as a barrier to a summary judgment for Travelers.

For these reasons and for these reasons only, I conclude that a genuine dispute of material fact remains as to whether the Pollution Exclusion precludes coverage for the damages awarded to the Judgment Creditors in Superior Court Civil Action No. 83–740.

### C. Vacatur of Conclusive Determinations with Respect to Claims under Mass. Gen.L. chs. 93A and 176D

■■■ The language used by the bankruptcy court in stating "conclusive determinations" that Travelers violated Mass.Gen.L. chs. 93A and 176D was not in the idiom customary for precise explanation of a ruling on a motion for summary judgment. The bankruptcy court used the term "finds" in explaining its conclusive determinations with respect to 93A and 176D claims. A court, in deciding a motion for summary judgment, cannot make "find[ings]" of fact on factual issues genuinely in dispute.

Before reversing on this ground, however, a reviewing court must take account of the fact that many trial and appellate opinions refer to a determination that the party opposing summary judgment has failed to proffer admissible evidence sufficient to support a particularized finding in its favor as a "finding," even though it is in essence a ruling "as a matter of law" that this particular issue is not genuinely in dispute.

Was this, in essence, not the nature of enough of the bankruptcy court's "findings" in this instance to support affirmance of the bankruptcy court's determinations on the 93A and 176D claims as conclusions of law based on undisputed facts, or at least of part of those determinations?

Upon a close examination of the record before this court and of the determinations of the bankruptcy court, I conclude that the determinations of the bankruptcy court were not ascertainably based on undisputed facts and that the bankruptcy court probably made findings of fact at the summary judgment stage that it was not authorized to make. For example, in making its determinations, the bankruptcy court recited several decisive inferences, labeled as "findings,"

about "misrepresentations" by Travelers in handling requests for information from the Judgment Creditors between 1994 and 1996 that imply, without further clarification, inferences about mental state or evaluative determinations of negligence that a finder of fact may reasonably have failed to draw from the evidence of record. This type of "finding" in the Memorandum of the bankruptcy court taints the reasoning to a degree that this court has no assurance that the bankruptcy court applied the correct standard in deciding the 93A and 176D claims before it.

I conclude also that the bankruptcy court committed an abuse of discretion by making conclusive determinations on the claims asserted by the Judgment Creditors against Travelers under chs. 93A and 176D when the Judgment Creditors had not moved for summary judgment on those grounds and the bankruptcy court had not given notice to Travelers and allowed Travelers an opportunity to proffer a response that might have shown that genuine disputes of material fact existed.

For these reasons, I conclude that the most appropriate way to proceed is for this court to VACATE all determinations of the bankruptcy court with respect to the claims against Travelers under Mass.Gen.L. chs. 93A and 176D, and to REMAND the case to the bankruptcy court for decision, in a manner consistent with this Opinion.

### D. Summary

For all of the foregoing reasons, I conclude that the most appropriate disposition of Travelers' appeal is to:

(1) AFFIRM for different reasons the bankruptcy court's "denial in part" of Travelers' motions for summary judgment with respect to Travelers' contention that the Pollution Exclusion precluded coverage;

(2) VACATE all of the bankruptcy court's determinations in its Order and its Memorandum of October 10, 1997 with respect to claims asserted against Travelers under Mass.Gen.L. chs. 93A and 176D; and

(3) REMAND the case to the bankruptcy court for further proceedings that it deems appropriate (which may include reconsider-

ation of dispositive motions under standards of decision consistent with this Opinion).

### VI. The Motions for Leave to Appeal by Other Parties

The alleged "finality" or alleged exceptional conditions to which the other parties have called attention in their motion for leave to appeal, both in written submissions and in oral argument, are essentially neutral in relation to whether they favor or disfavor interlocutory appeal or instead weigh more heavily against than in favor of interlocutory appeal. For example, several of the arguments have in effect asserted that parties to these proceedings have an interest in "chipping away" at the complex array of issues pending in the litigation before the bankruptcy court. Assuming, without deciding, that interests of this kind may constitute "exceptional conditions" to be considered in determining whether interlocutory appeal should be allowed, I conclude that, in the circumstances of this litigation, Salem Suede and the Judgment Creditors have failed to show that these interests warrant intervention.

The argument that a party will be harmed by delay in final resolution has little if any weight in the absence of a showing that a ruling by this court in an interlocutory appeal would be so decisive that it would terminate delay. If instead this court's order would simply be one more indecisive event, then it would be likely to create more complexity, and lead to more delay, rather than to simplify the proceedings and reduce delay in final resolution of the entire litigation or even some "discrete" claim or cause of action.

The contentions of the Judgment Creditors and Salem Suede in seeking appeal fail to identify questions that, if this court adjudicated now, would produce answers that simplify, rather than complicate, the remaining questions, if any, for adjudication by the bankruptcy court or by the district court acting as a trial court after transfer.

### ORDER

For the foregoing reasons, it is ORDERED:

(a) The following Notices of Appeal, treated as motions for leave to appeal, are DENIED:

(1) Salem Suede's Motion for Leave to File Interlocutory Appeal (Docket No. 1 in Civil Action No. 97–12587–REK).

(2) Zion Realty's Motion for Leave to File Interlocutory Appeal (Docket No. 1 in Civil Action No. 97–12588–REK).

(3) The Judgment Creditors' Motion for Leave to Appeal Interlocutory Order (Docket No. 1 in Civil Action No. 97–12590–REK).

(b) United Policyholders' Motion for Reconsideration of Bench Ruling Striking Its Amicus Curiae Brief (Docket No. 66 in Civil Action No. 97–CV–12587–REK, filed May 21, 1998) is DENIED.

(c) Travelers' Motion for Leave to File Interlocutory Appeal (Docket No. 1 in Civil Action No. 97–12589–REK) is ALLOWED.

(d) The Clerk is directed to enter forthwith on a separate document a Final Order as follows:

(1) Leave to proceed on interlocutory appeal is ALLOWED to Travelers Indemnity Company. On that appeal, the Bankruptcy Court's denial in part of Travelers Indemnity Company's Motion for Summary Judgment in the Adversary Proceeding is AFFIRMED, but on reasoning different from that of the Bankruptcy Court.

(2) All other attempted appeals in these consolidated proceedings in this court are DISMISSED.

(3) On remand, the Bankruptcy Court may conduct such further hearings and consider such motions as it deems appropriate, consistent with the Opinion of this date and this Final Order.