**WOOD, Appellee,**

v.

**DONOHUE, Appellant, et al.**

[Cite as *Wood v. Donohue* (1999), 136 Ohio App.3d 336.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–990127.

Decided Dec. 23, 1999.

*Daniel E. Whiteley, Jr.*, for appellee.

*Jerome J. Charls*, for appellant.

PAINTER, Judge.

This case involves the ancient doctrine of equitable conversion of real estate—when a contract for the sale of real property is signed, equitable title passes to the buyer. Here, the sale involved a land installment contract. The trial court, presumably relying on the doctrine of equitable conversion, held that the buyer's equitable estate in the land was equal to the amount of the purchase money the buyer had paid as of December 18, 1994 (the date a third party determined the property had been diminished in value). While appellant Steven B. Donohue (the buyer) and appellee Betty Lou Wood (the seller) both concede that the ancient law should be applied, they differ in the manner in which it should be applied under the peculiar facts of this case.

In 1983, Donohue and his girlfriend, Vicki Schroot, entered into a land installment contract with Wood to purchase a house for $87,900. Donohue and Schroot made a down payment of $30,000 and agreed to make monthly payments for the remainder of the purchase price under a thirty-year amortization schedule, with a seven-year balloon payment. The balance of the purchase price was paid in full in 1990.

The house was located on property near the Fernald uranium processing plant in Crosby Township. In 1985, a class action was initiated against the processing plant. Wood, Donohue, and Schroot filed claims. The lawsuit was settled, with the class members receiving monies for the diminution in value of their property as of December 18, 1984. The lawsuit's filing, settlement, and "diminution date" were all *after* the execution of the land contract. The Fernald trustees awarded $9,478 as compensation for the diminished value of the property involved in this case and issued a check in 1993 to Donohue, Schroot, and Wood. However, the check was not cashed.

Wood filed a complaint against Donohue, which was later amended to include Schroot and the Fernald Settlement Fund Trustees, seeking a declaration that she was entitled to 65.41% of the settlement check and that Donohue and Schroot were entitled to the remainder. After the Fernald trustees deposited a new check in an interest-bearing escrow account, Wood dismissed them from the case.

The trial court, after a bench trial, entered judgment for Wood, awarding her 65.41% of the settlement and Donohue the remainder. The apportionment was based on the portion of the purchase money paid by Donohue as of December 18, 1984, the date chosen by the Fernald trustees to determine the diminution

amount. (Schroot's counsel appeared and stated on the record before trial that Schroot was surrendering any interest she had in the award. There is, however, no order journalizing her surrender or her dismissal. Instead, the trial court ordered that Schroot take nothing from the settlement.)

Donohue appeals the trial court's decision to apportion the settlement award, contending in his sole assignment of error that the trial court erred in rendering a judgment contrary to law. In support of his assignment, Donohue argues that because he was the purchaser of the property under the land installment contract, he was entitled to the full settlement amount under the doctrine of equitable conversion.

■ Under the long-recognized doctrine of equitable conversion, where land is contracted to be sold, even under an executory contract, equity treats the exchange as actually taking place when the contract becomes effective.[1] As explained by Lord Thurlow in *Fletcher v. Ashburner*,[2] " '[M]oney directed to be employed in the purchase of land, and land directed to be sold and turned into money, are to be considered as that species of property into which they are directed to be converted; and this in whatever manner the direction is given, whether by will, by way of contract, marriage articles, settlement, or otherwise; and whether the money is actually deposited or only covenanted to be paid, whether the land is actually conveyed or only agreed to be conveyed, the owner of the fund, or the contracting parties, may make land money, or money land.' "

■ Thus, the seller, in equity, becomes the owner of the purchase money, and the purchaser becomes the owner of the property.[3] "The interest of the vendor under a contract of purchase is a right to receive the balance of the purchase price, which is secured by his retaining the legal title." [4]

Ohio courts have analogized the seller's retention of the legal title to the property as a lien "similar to a mortgage for the unpaid purchase price; the title is kept as security for the debt. Furthermore, it is presumed that a vendor with such a lien retains the title, not the land, as security for payment of the price." [5] (Citations omitted.)

---

1. *Berndt v. Lusher* (1931), 40 Ohio App. 172, 176, 178 N.E. 14, 15. See, also, *Gray v. Hawkins* (1858), 8 Ohio St. 449, 1858 WL 37.

2. *Gray v. Hawkins*, 8 Ohio St. at 453, quoting *Fletcher v. Ashburner* (1779), 1 Bro.C.C. (Brown's Chancery) 497.

3. *Berndt v. Lusher*, 40 Ohio App. at 176, 178 N.E. at 15.

4. *Id.*, 40 Ohio App. at 177, 178 N.E. at 15.

5. *Flint v. Holbrook* (1992), 80 Ohio App.3d 21, 28, 608 N.E.2d 809, 814; see *Kulich v. Troppe* (Apr. 8, 1992), Summit App. No. 15260, unreported, 1992 WL 74208. See, also, *Pierce v.*

■ While the concept of equitable conversion has been used predominantly to determine rights under standard sales contracts, the doctrine has also been applied in Ohio to land installment contracts.[6] In *Blue Ash Bldg. & Loan Co.*, a case in which this court determined that the sale of mortgaged property by land installment contracts constituted a "change in ownership" within the meaning of the acceleration-of-payment clauses in mortgage agreements, we applied the doctrine of equitable conversion. We relied, in part, on the following explanation of the interest of a purchaser under a land installment contract: " 'The vendee obtains an equitable estate entitling him generally to all the incidents of owner-ship. The vendee has the right to use the property free from interference of the vendor and is not impeachable for waste unless the security of the vendor becomes impaired.' " [7]

■ We explained that "[u]ntil the vendee has performed all his obligations under the contract and has attained legal title to the property, he does not stand as sole owner of the property. However, he does stand as an equitable owner of the property with the obligations and incidents of ownership attendant to possession of the property." [8] We relied on Black's Law Dictionary to define an "equitable owner" in this manner:

" 'One who is recognized in equity as the owner of property, because the real and beneficial use and title belong to him, although the bare legal title is vested in another, *e.g.*, a trustee for his benefit. One who has present title in land which will ripen into legal ownership upon the performance of conditions subsequent. There may therefore be two "owners" in respect of the same property, one the nominal or legal owner, the other the beneficial or equitable owner.' " [9]

We then analogized a land installment contract to the situation where a seller and purchaser have entered into a contract for the sale of land, but legal title has not yet passed, to explain, " 'The purchaser's interest under an enforceable

*Farm Bur. Mut. Ins. Co.* (Iowa 1996), 548 N.W.2d 551; *Farmers State Bank v. Neese* (1996), 281 Ill.App.3d 98, 216 Ill.Dec. 474, 665 N.E.2d 534.

6. See *Flint v. Holbrook, supra; Blue Ash Bldg. & Loan Co. v. Hahn* (1984), 20 Ohio App.3d 21, 20 OBR 22, 484 N.E.2d 186; *Kulich v. Troppe, supra.*

7. *Blue Ash Bldg. & Loan Co. v. Hahn,* 20 Ohio App.3d at 24, 20 OBR at 25, 484 N.E.2d at 189, quoting Comparison of California Mortgages, Trust Deeds and Land Sale Contracts (1960), 7 U.C.L.A.L.Rev. 83, 96–97.

8. *Id.,* 20 Ohio App.3d at 24, 20 OBR at 25, 484 N.E.2d at 189.

9. *Id.,* 20 Ohio App.3d at 24, 20 OBR at 25, 484 N.E.2d at 189, quoting Black's Law Dictionary (5 Ed.1979) 996.

contract is treated as real property for many purposes under the principles of equitable conversion. He is regarded in equity as the owner, with the legal title held in trust for him. His position is similar to that of a mortgagor, especially where the mortgagee holds the legal title.' " [10] We concluded that "the vendee of a land installment contract stands as an equitable owner of property sold under the contract * * *." [11]

This conclusion is further supported by R.C. 5313.01(A), which defines a "land installment contract," as "an executory agreement * * * [in which a] vendee agrees to pay the purchase price in installment payments, while the vendor retains title to the property as security for the vendee's obligation." This "statutory language clearly describes the vendor's retention of title 'as security for the vendee's obligation' to pay the balance of the installment payments under the land contract." [12]

■ Thus, the land contract in this case effectively transferred the ownership and equitable title of the property to Donohue. As the equitable owner, Donohue bore all losses, but also was entitled to enjoy all the benefits that might accrue.[13]

■ The doctrine of equitable conversion is usually applied to determine which party bears the loss when property is damaged by an accidental occurrence after a real estate contract has been entered, but before a deed is executed. The usual scenario involves a determination of who is entitled to insurance proceeds.[14] We see no reason not to apply that analysis to the settlement proceeds in this case. To do so seems especially equitable where the land installment contract clearly demonstrates that the parties intended for Donohue to bear any loss by providing that (1) while Wood was to maintain "hazard" insurance on the property to the extent of the remaining purchase price, Donohue was to be considered a named insured and had the obligation to pay what constituted the annual premium in monthly installments, (2) the insurance proceeds were to be

---

**10.** *Blue Ash Bldg. & Loan Co. v. Hahn*, 20 Ohio App.3d at 24, 20 OBR at 26, 484 N.E.2d at 189, quoting 3 McDermott, Ohio Real Property Law and Practice (3 Ed.1966) 393, Section 28–22A.

**11.** *Id.*, 20 Ohio App.3d at 24, 20 OBR at 26, 484 N.E.2d at 189–190.

**12.** *In re Johnson* (Bankr.Ct.N.D.Ohio 1987), 75 B.R. 927, 930.

**13.** *Kulich v. Troppe, supra; United States v. Big Value Supermarkets, Inc.* (C.A.6, 1990), 898 F.2d 493.

**14.** See *Adams v. Whitfield* (Sept. 7, 1983), Lorain App. Nos. 3422 and 3425, unreported, 1983 WL 4211; *Kulich v. Troppe, supra.*

used either to repair or to reconstruct the property, (3) Donohue was entitled to any excess after reconstruction or repair, and (4) if the property were a total loss, Donohue had the option to repair or reconstruct the property or to apply the proceeds to the purchase price and complete the purchase.

Under the doctrine of equitable conversion, any loss in the property's value due to an accidental occurrence fell on Donohue as owner of the equitable title. We conclude that, like insurance proceeds, the settlement money from the Fernald trustees provided to Wood was held by her as trustee for Donohue, subject to her own claims for any unpaid purchase money.[15] Thus, under the doctrine of equitable conversion, Wood was only entitled to the proceeds to the extent that she could prove that her security interest in the unpaid purchase money had been impaired.[16] At the time the money was paid, Wood had received the purchase money. Thus, the proceeds should have been paid to Donohue alone. Otherwise, Wood would be unfairly enriched by, in effect, recovering twice on the same property—the purchase price that she asked for and received, and damages for the diminution in value, which she did not suffer.

Accordingly, we affirm the trial court's judgment as to Schroot. We reverse the trial court's judgment as to Wood and Donohue. We enter judgment for Donohue, ordering that the entire settlement amount placed in the escrow account, plus all accrued interest, be awarded to him.

*Judgment accordingly.*

GORMAN, P.J., and WINKLER, J., concur.

---

15. See *Adams v. Whitfield, supra.*

16. Accord *Kulich v. Troppe, supra.*