**In re James COYKENDALL, Debtor.**

No. 00–31410.

United States Bankruptcy Court,
N.D. Ohio.

Jan. 10, 2001.

K.C. Loos, Toledo, OH, for debtor.

M. Charles Collins, Toledo, OH, for Winfred Heidebrink.

Anthony B. DiSalle, Toledo, OH, Standing Chapter 13 Trustee.

### DECISION AND ORDER

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court after a Continued Hearing on the Debtor's Objection to the Proof of Claim submitted by Winfred Heidebrink, a creditor of the above-captioned Debtor. At the Hearing held on the matter, two issues were presented for the Court to resolve: should the Creditor, Mr. Heidebrink, in addition to receiving contractual damages, be entitled to receive damages based upon the 'fair rental standard' provided for in O.R.C. § 5313.10; and at what interest rate should Mr. Heidebrink's contractual damages be calculated? From the evidence presented at the Hearing, and from the legal memoranda submitted by the Parties, the Court makes the following findings of fact with regards to the issues raised by the Parties.

On April 30, 1992, the Creditor, Mr. Heidebrink, and the Debtor, James R. Coykendall, entered into a Land Installment Contract for the purchase of a two-unit apartment building which consisted of an 'upstairs' and a 'downstairs' unit. The selling price of the building, which is located in Toledo, Ohio, was Twenty-eight Thousand Five Hundred dollars ($28,-500.00), with the Debtor required to pay the Creditor Eight Hundred dollars ($800.00) at closing. Thereafter, the terms of the Parties' agreement provided that the Debtor would pay to the Creditor Three Hundred dollars ($300.00) per month, until May 31, 1999, at which time the full amount still owing on the contract would become fully due (i.e., a balloon payment). This date, however, was later extended, by mutual agreement of the Parties, to August 31, 1999. Additional terms of the Parties' contract provided that the Debtor was responsible for the payment of taxes, utilities and insurance on the building. The contract also set the interest rate on the Parties' agreement at "10% per annum, adjusted monthly." However, in the event of a breach by the Debtor of any of the conditions set forth in the agreement, the contract provided that:

> Upon default by Buyer of the conditions herein, Seller may at his option and without notice to Buyer increase the interest rate payable herein to twelve percent (12%) per annum.

In 1993 and 1994, the evidence in this case shows that the Debtor breached the clause in the Parties' agreement relating to the Debtor's obligation to pay the apartment building's taxes, utilities, and insurance. As a direct result, the Creditor caused, for a temporary period of time, the interest rate on the Parties' agreement to become 12%. In April of 1999, the Debtor also committed a further breach of the Parties' agreement when the Debtor, al-

though continuing to receive rental payments from the apartment building, ceased altogether making payments to the Creditor. This action (or inaction as it is probably better termed) caused the Creditor to eventually commence, in an Ohio state court, foreclosure proceedings against the Debtor in accordance with Chapters 2323 and 5313 of the Ohio Revised Code. However, before the foreclosure proceedings resulted in the Creditor regaining actual possession of the property, the Debtor, on April 7, 2000, petitioned this Court for relief under Chapter 13 of the United State Bankruptcy Code.

At the time the Debtor commenced his bankruptcy case, the evidence in this case shows that the Debtor had, in eighty-three (83) monthly installments of Three Hundred dollars ($300.00) each, paid a total of Twenty-four Thousand Nine Hundred dollars ($24,900.00) to the Creditor. Additional evidence presented in this case also shows that since coming into possession of the apartment building in 1992, the Debtor has rented, on an almost continuous basis, the 'downstairs unit' of the apartment building for between $300 and $375 dollars per month; the same also being true since 1993 for the 'upstairs unit,' except that the rental price for this unit was for between $375 and $425 dollars per month. As a consequence, the Debtor has, since 1992, collected approximately Sixty-eight Thousand Eight Hundred Fifty dollars ($68,-850.00) in rent.

On May 11, 2000, the Creditor filed a proof of claim in the amount of Thirty-one Thousand Nine Hundred Sixty-seven and 42/100 dollars ($31,967.42). This amount, through the filing of an amended proof of claim, was later increased to Sixty-two Thousand Four Hundred Fifty dollars ($62,450.00). Presently, the Creditor claims that he should be allowed a claim against the Debtor in the amount of Sev-enty-four Thousand One Hundred Sixty-four dollars ($74,164.00). This amount was calculated as follows: First, the Creditor contends that he is entitled to Thirty Thousand Two Hundred Fourteen dollars ($30,214.00) in contractual damages as a result of the Debtor's violation of the Parties' agreement. This amount, except for the times the Debtor was in default with the terms of the contract, utilized a 10% interest rate, compounded at least on a monthly, if not daily basis. Second, pursuant to the 'fair rental standard' provided for in O.R.C. § 5313.10, the Creditor asserts that he is permitted to recover an additional Forty-three Thousand Nine Hundred Fifty dollars ($43,950.00), the amount of which represents, in conformance with the formula set forth in O.R.C. § 5313.10, the difference between the total rents received by the Debtor from the apartments and the sum of the Debtor's monthly installment payments to the Creditor. The Debtor, however, has objected to the Creditor's proof of claim on the basis that, at most, the Creditor is entitled to recover the balance due on the Parties' land installment contract, and that in this regards, the Creditor has miscalculated the proper interest rate applicable thereon.

## LEGAL ANALYSIS

Under Ohio law, a "land installment contract" is statutorily defined as "an executory agreement which by its terms is not required to be fully performed by one or more of the parties to the agreement within one year of the date of the agreement and under which the vendor agrees to convey title in real property located in this state to the vendee and the vendee agrees to pay the purchase price in installment payments, while the vendor retains title to the property as security for the vendee's obligation." O.R.C. § 5313.01(A). In the event of a default by the vendee-

purchaser under the terms set forth in a land installment contract, and in order to protect the vendor-seller's legal interest in the property,[1] an action may be brought by the vendor-seller to recover possession of the property. In this respect, however, Ohio law, in order to also protect the vendee-purchaser's equitable interest in the property, provides that where the vendee-purchaser has paid in accordance with the terms of the contract for a period of more than five (5) years-as is the situation in the present case-the vendor-seller must bring an action of foreclosure in accordance with O.R.C. § 5313.07 in order to recover possession of the property. This section states:

> If the vendee of a land installment contract has paid in accordance with the terms of the contract for a period of five years or more from the date of the first payment or has paid toward the purchase price a total sum equal to or in excess of twenty per cent thereof, the vendor may recover possession of his property only by use of a proceeding for foreclosure and judicial sale of the foreclosed property as provided in section 2323.07 of the Revised Code.

Thereafter, this section provides that a vendor-seller is entitled to recover damages "up to and including the unpaid balance due on the land installment contract." In addition, with respect to a vendor-seller's recoverable damages, O.R.C. § 5313.10 provides that:

> The election of the vendor to terminate the land installment contract by an action under section 5313.07 or 5313.08 of

the Revised Code is an exclusive remedy which bars further action on the contract unless the vendee has paid an amount less than the fair rental value plus deterioration or destruction of the property occasioned by the vendee's use. In such case the vendor may recover the difference between the amount paid by the vendee on the contract and the fair rental value of the property plus an amount for the deterioration or destruction of the property occasioned by the vendee's use.

In accordance with these sections, the Creditor argues that he is entitled to aggregate his recoverable damages so that he can recover, in full, both his contractual damages under O.R.C. § 5313.07, as well as those damages based upon the 'fair rental value' standard provided for in O.R.C. § 5313.10. Simply put, it is the Creditor's position that the statutory scheme set forth in O.R.C. §§ 5313.07 and 5313.10 permits a creditor to receive compensatory damages up to and beyond a creditor's actual damages. The Court, however, for two reasons must respectfully disagree.

■ First, Ohio law has consistently held that O.R.C. § 5313.10 is only applicable if the sale proceeds, in an action of foreclosure, are insufficient to pay the creditor's contractual damages. *Dalton v. Acker*, 5 Ohio App.3d 150, 151, 450 N.E.2d 288, 290 (Ohio Ct.App.1981); *Frey v. Hibbard*, 62 Ohio App.3d 781, 784, 577 N.E.2d 669, 670 (Ohio Ct.App.1989); *Farkas v. Bernard*, 1996 WL 257455 *3 (Ohio App.

---

1. Ohio law has held that upon execution of the land installment contract, the purchaser (i.e., the vendee) stands as an equitable owner of the property sold under the contract, while the seller (i.e., the vendor) retains legal title to the property until all the terms of the contract, including all payments due thereunder, have been performed in full. *Blue Ash Bldg.*

*& Loan Co. v. Hahn*, 20 Ohio App.3d 21, 26, 484 N.E.2d 186, 191 (Ohio Ct.App.1984); *Wood v. Donohue*, 136 Ohio App.3d 336, 340–41, 736 N.E.2d 556, 559–60 (Ohio Ct.App. 1999). *See also Flint v. Holbrook*, 80 Ohio App.3d 21, 608 N.E.2d 809 (Ohio Ct.App. 1992).

10th Dist.). To put it differently, O.R.C. § 5313.10 was not enacted to enable a vendor-seller to obtain damages beyond those actually sustained, but was instead enacted to protect the vendee-purchaser from having a deficiency judgment obtained against them in a foreclosure action brought under O.R.C. § 5313.07. The legal basis for this was expounded upon in *Dalton v. Acker,* where the court, after examining the language of O.R.C. § 5313.10, simply stated: "The bar of any 'further action on the contract' [as provided for in O.R.C. § 5313.10] is plainly a bar to a deficiency judgment." 5 Ohio App.3d at 151, 450 N.E.2d at 290. The policy behind this was also elaborated upon in an unpublished decision brought to this Court's attention by Debtor's counsel:

> The import of R.C. 5313.10 precludes a deficiency judgment in a land contract. The underlying purpose of R.C. 5313.07 is that if a vendee has a large amount of equity in the real estate, the vendor must bring a foreclosure action as opposed to the vendee's interests being terminated in the simple forfeiture procedure under R.C. 1923. In addition, R.C. 5313.10 protects such a vendee from paying a large sum on or towards the purchase price only to forfeit all monies paid, lose the real estate in a foreclosure, and also be subject to deficiency judgment.

*Castro v. Prokop,* 1991 WL 35640 *2 (Ohio App. 11th Dist.). Along this line, the Court also observes that it could not find one case, in which O.R.C. § 5313.10 was applied so as to permit an aggrieved seller-vendor to recover both his full contractual damages under O.R.C. § 5313.07, as well as to all those damages a vendor may be entitled to under O.R.C. § 5313.10.

██ The second reason, the Court declines to adopt the position espoused by the Creditor is that even if Ohio law did permit a vendor-seller to recover excess compensatory damages under O.R.C. §§ 5313.07 and 5313.10, these sections are not directly applicable in this case for computing damages. This is because § 5313.07 is, by its specific language, only applicable when a judicial sale has occurred-the relevant language of 5313.07 stating: "...the vendor may recover possession of his property only by use of a proceeding for foreclosure and judicial sale..." and, "the vendor shall be entitled to proceeds of the sale...." In this case, of course, since the commencement of the Debtor's bankruptcy case enjoined any judicial sale of the property subject to the Parties' land installment contract, § 5313.07, by definition, cannot be applicable to the particular circumstances of this case. With regards to § 5313.10, a review of the statute's pertinent language shows that it was only meant to apply once the remedy available in O.R.C. § 5313.07 had been accomplished: "The election of the vendor to terminate the land installment contract by an action under section 5313.07 or 5313.08 of the Revised Code is an exclusive remedy which bars further action on the contract ..." Accordingly, for the above-stated reasons, the Court finds that the measure of the Creditor's claim against the Debtor's bankruptcy estate will be determined, as most claims in bankruptcy are, by general principles of contract law. *See* 11 U.S.C. § 502.

██ In the present case, the Creditor claims that his contractual damages are Thirty Thousand Two Hundred Fourteen dollars ($30,214.00). The Debtor, however, disputes this figure arguing that the Creditor incorrectly compounded the interest due under the Parties' land installment contract. Specifically, the Debtor asserts that the Creditor compounded the interest due under the Parties' agreement at least monthly, if not daily, despite the

fact that there exists no provision in the Parties' contract which permits interest to be compound at such a rate. After considering this matter, the Court finds the Debtor's objection to be well taken to the extent that the interest due under the Parties' contract was compounded on a daily basis. In this regards, the Court holds that the interest rate due under the Parties' agreement should be compounded, as specifically provided for therein: "per annum, adjusted monthly." However, also with regards to the interest due under the Parties' agreement, the Court finds that there exists no impediment for the Creditor to retroactively charge, since the first time that the Debtor defaulted on the terms of the Parties' contract, an interest rate of 12%. Specifically, there is nothing which would lead this Court to believe that the following clause, which was previously set forth in this Court's recitation of facts, prohibits the Creditor from applying retroactively an interest rate of 12% commencing from the time the Debtor first defaulted on the terms of the Parties' contract:

> Upon default by Buyer of the conditions herein, Seller may at his option and without notice to Buyer increase the interest rate payable herein to twelve percent (12%) per annum.[2]

In addition, the Court believes that the Creditor, on his claim, may be entitled to postpetition interest, reasonable fees, costs, and charges if the Creditor can establish that he is an oversecured creditor within the meaning of 11 U.S.C. § 506(b).[3] Accordingly, based upon this holding, the Court will schedule a further hearing at which time the Creditor, if he so desires,

will be given the opportunity to present evidence that he is an oversecured creditor within the meaning of § 506(b). In addition, the Creditor shall, at least twenty (20) calendar days prior to the further hearing scheduled in this matter, provide to Debtor's counsel a recalculated figure of his contractual damages. Thereafter, based upon the other holdings contained in this Decision, as well as any other applicable bankruptcy law, the Debtor at the hearing, or by written motion, may interpose any objections thereto.

Accordingly, it is

**ORDERED** that the issues set forth in this Decision be, and are hereby, set for a further Hearing on Wednesday, February 28, 2001, at 1:30 P.M., in Courtroom No. 1, Room 119, United States Courthouse, 1716 Spielbusch Avenue, Toledo, Ohio.

---

2. It should be pointed out that this language clearly references the clause in the Parties' agreement which provided that interest under the Parties' contract shall be compounded at "10% per annum, adjusted monthly."

3. Section 506(b) of the Bankruptcy Code provides, "[t]o the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose."