Clive STEVENS

v.

CSA, INC.

Civ.A. No. 98–12480–RWZ.

United States District Court,
D. Massachusetts.

Aug. 27, 2001.

Mark G. DeGiacomo, Murtha, Cullina, Roche, Carens & DeGiacomo, Boston, MA, Thomas J. Raftery, Carlisle, MA, for CSA, Inc.

John F. Drew, Lane & Altman, Joseph P. Davis, III, Adler, Pollock & Sheehan, P.C., Boston, MA, for Clive Stevens.

Steven D. Pohl, Brown, Rudnick, Boston, MA, for Congress Financial Corp.

Douglas B. Rosner, Christine D. Lynch, Goulston & Storrs, P.C., Boston, MA, for Official Unsecured Creditors Committee.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

This is an appeal from an order of the bankruptcy court denying Plaintiff's mo-

tion to compel Defendant to assume or reject a contract between them.

■ The Bankruptcy Code provides that, with certain exceptions, a bankruptcy trustee may, "subject to the court's approval, ... assume or reject any executory contract ... of the debtor." 11 U.S.C. § 365(a). A Chapter 11 debtor-in-possession (DIP) enjoys the same power pursuant to 11 U.S.C. § 1107(a),[1] and may assume or reject an executory contract "at any time before the confirmation of a plan." 11 U.S.C. § 365(d)(2). A DIP cannot be ordered to assume an executory contract, *In re III Enterprises, Inc. V,* 163 B.R. 453 (Bankr.E.D.Pa.1994), order aff'd, 169 B.R. 551 (E.D.Pa.1994); however, the bankruptcy court, "on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease." § 365(d)(2). Bankruptcy Rule 6006(b) provides that such a motion to compel an assumption or rejection decision by the DIP is governed by Bankruptcy Rule 9014, which establishes procedural requirements in contested matters.

Plaintiff, believing that his contractual relationship with Defendant CSA, Inc. ("CSA") constituted an executory contract, moved for such an order from the bankruptcy court. The bankruptcy court denied Plaintiff's motion, not as an exercise of the discretion it enjoyed pursuant to § 365(d)(2), but on the ground that the contract at issue was not executory, and that therefore § 365 was not applicable. Plaintiff now asks this court to overturn that decision.

## Jurisdiction

■ District Courts have jurisdiction to review orders issued by bankruptcy courts under two separate provisions of 28 U.S.C. § 158(a). Orders which qualify as "final judgments, orders and decrees" are reviewed as of right under § 158(a)(1). Due to the unique nature of bankruptcy proceedings, orders which in normal civil litigation would be unappealable interlocutory orders may yet meet the finality test of § 158(a)(1). *See, In re American Colonial Broadcasting Corp.,* 758 F.2d 794, 801 (1st Cir.1985); *In re Saco Local Development Corp.,* 711 F.2d 441, 443–446 (1st Cir.1983); *In re Salem Suede, Inc.,* 221 B.R. 586, 595–596 (D.Mass.1998). "A bankruptcy order need not dispose of all aspects of a case in order to be final; an order which disposes of a 'discrete dispute within the larger case' will be considered final and appealable." *In re American Colonial Broadcasting Corp.,* 758 F.2d at 801 (quoting *In re Saco,* 711 F.2d at 444).

■ District courts also enjoy discretionary jurisdiction to review interlocutory orders issued by bankruptcy courts under 28 U.S.C. § 158(a)(3), which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals ... *with leave of the court,* from other interlocutory orders and decrees ... of bankruptcy judges entered in cases and proceedings ...." (emphasis added). Section 158(a)(3) on its face grants discretion to the district court to decide whether to hear an appeal from an interlocutory bankruptcy court order, and neither the District Court's Local Rules nor the Bankruptcy Court's Local Rules explicitly prescribe guides for the district court to use in exercising this discretion. *In re Salem Suede,* 221 B.R. at 595. *But see, In re Bank of New England Corp.,* 218 B.R. 643 (1st Cir. BAP 1998) (urging that district courts' decisions under § 158(a)(3) should be governed by the standard governing district court certifica-

---

1. Section 1107(a) provides that a DIP "shall have all the rights ... and powers, and shall perform all the functions and duties, ... of a trustee serving in a case under this chapter."

tion of interlocutory appeals to the circuit courts, found at 28 U.S.C. § 1292(b)).

■ There is scant precedent addressing whether the particular type of decision at issue here—a bankruptcy court's denial of a motion under § 365(d)(2) to force assumption or rejection of an executory contract—is interlocutory or final. *But see, In re Heston Oil Co.,* 69 B.R. 34 (N.D.Okl. 1986) (holding that bankruptcy court ruling that oil and gas leases not executory, and that § 365 therefore inapplicable, was reviewable under 28 U.S.C. § 158, but not differentiating between § 158(a)(1) and § 158(a)(3)). By basing its order on a ruling that the contract was not executory, the bankruptcy court presented this court with a discrete and well-framed issue of law, the resolution of which will have important implications for both Stevens and CSA as the bankruptcy proceeding progresses. Even assuming that order was interlocutory, as argued by CSA, review is therefore appropriate under § 158(a)(3).

**Executory Contract**

■ With respect to the substance of the bankruptcy court's order, the issue on appeal is whether that court was correct in ruling that the contract in force between Stevens and CSA when CSA filed for bankruptcy was not executory.[2] For purposes of § 365, the textbook definition of an executory contract is "a contract under which the obligation of both the [debtor] and the other party to the contract are so far under-performed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other." Verne Countryman, *Executory Contracts in Bankruptcy; Part I,* 57 Minn. L.Rev. 439, 460 (1973). By invoking the "material breach" standard, the Countryman definition serves to limit the number of contracts that will be found to be executory for purposes of § 365, which is desirable because at least some obligations remain to be performed on both sides in many contracts. *Butler v. Resident Care Innovation Corp.,* 241 B.R. 37, 42 (D.R.I.1999).[3] Courts also apply what has been termed the "functional approach," which calls for the court to decide whether a contract is executory by investigating whether rejection of the contract would benefit the debtor's estate, *id.* at 44 (citations omitted), an inquiry intended to invoke the broader purposes of § 365 and the Bankruptcy Act. Courts in this circuit apply both tests, often in tandem, and the 1st Circuit has endorsed this approach. *See, In re La Electronica, Inc.,* 995 F.2d 320, 322 n. 3 (1st Cir.1993).

■ The bankruptcy judge in this case applied something akin to the Countryman test, rather than the "functional approach," in ruling that the contract was not executory since "there 'ain't nothin'

---

**2.** Stevens and CSA entered into the Distribution Agreement and License on January 1, 1996, which they amended April 11, 1997. They subsequently entered into the Settlement Agreement of May 5, 1998, which Stevens declared terminated pre-bankruptcy due to CSA's default. The contract in force between the parties as of the date of the bankruptcy therefore consisted of only those portions of the Settlement Agreement that survived its termination, together with those portions of the amended Distribution Agreement and License that survived both the creation of the Settlement Agreement and the termination thereof.

**3.** The Bankruptcy Code provides no definition of an executory contract, and the legislative history of § 365(a) suggests that Congress intended that performance remain due on both sides, but provided no guidance concerning how substantial that performance had to be. *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 523 n. 6, 104 S.Ct. 1188, 79 L.Ed.2d 482 (citations omitted).

left;'" because "[t]his is not a continuing transaction ... where the payment obligations could leap over the filing. The goods are in-house. No more are being purchased, no more are contemplated to be purchased." The judge also relied on *In re Drake,* 136 B.R. 325 (Bankr.D.Mass. 1992), for the proposition that "the simple fact that money should or should not be paid does not make [a contract] executory." The judge's decision that the contract was not executory was a legal conclusion based upon interpretation of a contract, review of which by this court is de novo. *In re Butler,* 241 B.R. at 42 (citations omitted).[4]

Applying the law to these facts, I conclude that the decision of the bankruptcy court was correct. The Settlement Agreement fundamentally transformed the contractual relationship between Stevens and CSA. By virtue of that agreement, CSA no longer had on-going royalty obligations under the original licensing and distribution arrangement, but in essence owed a fixed sum of money, made due and payable under Section 4(b)(i) thereof upon default by CSA. CSA was in default pre-petition, and by virtue of the Settlement Agreement, Section 4(b), CSA had simply a non-exclusive license to sell existing inventory, which extended beyond the six-month time limitation contained in Article 2.3 of the original Distribution Agreement and License. (See Judge Gorton's Memorandum and Order of February 22, 1999, denying Plaintiff's motion for a temporary restraining order enjoining CSA from selling its HealthWalker inventory.) Stevens argues that this limited license was executory because both parties had continuing obligations thereunder. In particular, Stevens argues in his Appeal Brief that CSA's right to sell was contingent on contractual obligations other than the payment obligation under Section 1 of the Settlement Agreement, citing references in Article 2.3 of the Distribution Agreement and License to continuing obligations under Articles 7, 8, 9, and 10 of that agreement. However Plaintiff fails to explain the actual significance of these provisions under the limited contractual relationship that existed after CSA breached the Settlement Agreement, and likewise fails to meet the additional requirement of explaining how violation of whatever obligations existed under those provisions would constitute a material breach on CSA's part, as required under the Countryman test.

The order of the bankruptcy court is therefore affirmed.

---

4. Although reviewing courts appear to review decisions under § 365 de novo regardless of whether the Countryman test or the "functional approach" was applied by the bankruptcy court, it is difficult to see how the "functional approach" can be understood as anything other than a balancing of the equities, a fact-based exercise which would normally be set aside only if "clearly erroneous." *In re Butler,* 241 B.R. at 41–42.