ELECTRONIC CITATION: 2006 FED App. 0002P (6th Cir.)
File Name: 06b0002p.06

# BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

In re: RAVENSWOOD APARTMENTS, LTD., )
                                    )
            Debtor.                 )
_____ )
                                    )
JAMES F. O'BRIEN, TRUSTEE,          )
ROBERT S. CORBLY, GLEN A. BURNS,    )
and CAROL BURNS,                    )
                                    )
            Appellants,             )
                                    )
      v.                            )   No. 05-8017
                                    )
RAVENSWOOD APARTMENTS, LTD.,        )
                                    )
            Appellee.               )
_____ )

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio, Western Division at Cincinnati.
No. 04-15832.

Argued: November 9, 2005

Decided and Filed: February 17, 2006

Before: GREGG, LATTA, and WHIPPLE, Bankruptcy Appellate Panel Judges.

_____

## COUNSEL

**ARGUED:** J. Michael Debbeler, GRAYDON HEAD & RITCHEY LLP, Cincinnati, Ohio, for Appellants. Mark Vanderlaan, DINSMORE & SHOHL LLP, Cincinnati, Ohio, for Appellee. **ON BRIEF:** J. Michael Debbeler, Katherine M. Lasher, GRAYDON HEAD & RITCHEY LLP, Cincinnati, Ohio, for Appellants. John J. Schmidt, DINSMORE & SHOHL LLP, Cincinnati, Ohio, for Appellee.

-----

**OPINION**

-----

JAMES D. GREGG, Bankruptcy Appellate Panel Judge. James F. O'Brien, Trustee, Robert S. Corbly, Glen A. Burns and Carol Burns (the "Appellants") appeal the bankruptcy court's order denying their motion to compel the Debtor to make payments under a land installment contract and to assume or reject the contract within a specified time period. For the reasons that follow, we find that the land installment contract is executory under controlling Sixth Circuit precedent and Ohio law and REVERSE the order of the bankruptcy court.

## I. ISSUE ON APPEAL

The sole issue on appeal is whether the land installment contract is an "executory contract" within the meaning of 11 U.S.C. § 365.

## II. JURISDICTION AND STANDARD OF REVIEW

The bankruptcy court's order constitutes a final order, which may be appealed as of right. 28 U.S.C. §158(a)(1); *Stevens v. CSA, Inc.*, 271 B.R. 410, 413 (D. Mass. 2001); *Enter. Energy Corp. v. United States (In re Columbia Gas Sys., Inc.)*, 146 B.R. 106, 110-11 (D. Del. 1992), *aff'd*, 50 F.3d 233 (3d Cir. 1995); *In re Heston Oil Co.*, 69 B.R. 34, 35-36 (N.D. Okla. 1986) (all finding appealable orders denying motions to compel assumption or rejection on basis that contracts were not executory). The United States District Court for the Southern District of Ohio has authorized appeals to the Bankruptcy Appellate Panel, and neither party has timely elected to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). Accordingly, the Panel has jurisdiction to decide this appeal.

Since the Appellants claim that the order denying their motion represents an error of law, the order is reviewed de novo. *E.g.*, *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 696 n.1 (6th Cir. 1999). "De novo means that the appellate court determines the law independently of the trial court's

determination." *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001).

### III.   FACTS

In November 1996, Ravenswood Apartments, Ltd. (the "Debtor") and James F. O'Brien, Trustee ("O'Brien") entered into a land installment contract (the "Contract"). Under the Contract, O'Brien agreed to sell an 82-unit apartment complex located in Cincinnati, Ohio (the "Property"), to the Debtor. The total purchase price, $3,415,000, was to be paid by the Debtor in monthly installments of approximately $27,000, with any remaining balance to be entirely due on November 1, 2020. Upon payment of the full purchase price, O'Brien was to convey title of the Property to the Debtor.

Beginning in the early 2000s, a variety of factors caused increased vacancies at the apartment complex, resulting in several years of financial difficulty for the Debtor. Eventually, on April 28, 2004, the Appellants filed suit against the Debtor in an Ohio state court. The Appellants' state court complaint alleged various defaults under the Contract and sought, among other things, specific performance of the Contract, damages for breach of the Contract, and "restitution of [Appellants'] possession" of the Property. (J.A. at 132.)

Soon thereafter, on July 22, 2004, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On August 17, 2004, the Appellants filed a motion to compel the Debtor to make payments under the Contract in accordance with the terms thereof, and force the Debtor to assume or reject the Contract within a specified time period. The Debtor filed a response to the motion on August 30, 2004. A hearing was held before the bankruptcy court on October 6, 2004.

On January 21, 2005, the bankruptcy court entered an order determining that the Contract was not executory and denying the Appellants' motion. In reaching this conclusion, the court held that the Sixth Circuit Court of Appeals case *Terrell v. Albaugh (In re Terrell)*, 892 F.2d 469 (6th Cir. 1989), was "not controlling" because the contract at issue in *Terrell* was governed by Michigan law.

(J.A. at 197.) Instead, the bankruptcy court's analysis focused on an Ohio statutory provision. That provision precludes forfeiture of a vendee's payments under a land installment contract where payments have been made for five years or more or where more than twenty percent of the purchase price has been paid. Ohio Rev. Code Ann. § 5313.07. The bankruptcy court interpreted the effect of § 5313.07 on the Contract as follows:

> Where payments under the [land installment contract] have stopped prior to the filing of the bankruptcy, those rights have been vested and it cannot be said that the contract is any longer executory. In the case before us the five year condition has been met and the right[s] to which the debtor/vendee is entitled by virtue of the statute have been vested in debtor, and they did so prior to the time that the bankruptcy case was filed.
>
> The situation here is comparable to that of a lease or contract terminated by state law prior to the filing of a bankruptcy case. Because the rights of the debtor in such a case have been fixed prior to the filing of the bankruptcy case, the lease or contract can no longer be assumed by a trustee.

(J.A. at 197-98.) The Appellants filed this timely appeal of the bankruptcy court's order on January 27, 2005.

## IV.   DISCUSSION

### A.  Is the Contract Executory under the Bankruptcy Code and the Ohio Common Law?

#### 1.  Definition of Executory Contract Under the Bankruptcy Code.

Section 365(a) of the Bankruptcy Code provides that, subject to court approval, the trustee may assume or reject any executory contract of the debtor. 11 U.S.C. § 365(a). The phrase "executory contract" is not defined in § 365(a) or any other section of the Bankruptcy Code. A clue to the intended meaning of the term is found in the legislative history, which suggests "that Congress intended the term to be defined as a contract 'on which performance remains due to some extent on both sides.'" *Terrell v. Albaugh (In re Terrell)*, 892 F.2d 469, 471 (6th Cir. 1989) (quoting S. Rep. No. 95-989, at 58 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5844; H.R. Rep. No. 95-595, at 347 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6303). Unfortunately, this definition

has not proven particularly workable because, in practicality, "[i]t is only the rare agreement that does not involve unperformed obligations on either side." *Huntington Nat'l Bank v. Alix (In re Cardinal Indus., Inc.)*, 146 B.R. 720, 726 (Bankr. S.D. Ohio 1992).

The Sixth Circuit Court of Appeals has defined the term "executory contract" on two occasions. The most recent of these cases, *Terrell*, involved interpretation of a land sale contract executed under Michigan law. After citing the definition set forth in the legislative history, the *Terrell* court adopted the so-called Countryman definition of an executory contract. According to Professor Vern Countryman, an executory contract is "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." *In re Terrell*, 892 F.2d at 471 n.2 (quoting Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973)). Applying this definition to the land sale contract before it in *Terrell*, the Sixth Circuit concluded that there were "material obligations left to be performed by both parties" and that "the failure of either party to perform [those] remaining obligations would give rise to a material breach allowing the other party to avoid continued performance." *Id*. at 472. For instance, "[t]he failure of a vendee to continue paying installments [would give] the vendor a number of remedies for breach, including forfeiture and foreclosure." *Id*. (citations omitted). "Likewise, if a vendor fails to transfer title when promised or impairs his or her ability to deliver title in the future, he or she has committed a material breach entitling the vendee to sue for specific performance or to cease performance and sue for recision." *Id*. (citations omitted).

In reaching this conclusion, *Terrell* expressly overruled a prior bankruptcy court decision, *Chapman v. Britton (In re Britton)*, 43 B.R. 605 (Bankr. E.D. Mich. 1984), which held that land sale contracts were not executory in Michigan. In *Britton*, the bankruptcy court determined that land sale contracts were analogous to mortgages in that the "vendor holds legal title to the land only as security for the payment of the purchase price." *In re Terrell*, 892 F.2d at 472 (discussing *In re Britton*, 43 B.R. at 607). The Sixth Circuit explained that the *Britton* court's emphasis on the functional "similarities between land sale contracts and mortgages" was misguided. Rather, under the Countryman definition, the executory nature of the contract is determined by "the unperformed obligations of the two parties or the legal effect of the failure to perform." *Id*. "It is precisely

because the vendor has not completed performance, unlike most mortgagees, that the contract is executory." *Id*. at 472 n.5.

*Terrell* also rejected a Seventh Circuit case, *Mitchell v. Streets (In re Streets & Beard Farm P'ship)*, 882 F.2d 233 (7th Cir. 1989), which deemed an Illinois land sale contract non-executory because "the only remaining obligation on the part of the vendor[s] [was] to deliver legal title upon the completion of the payments." *In re Terrell*, 892 F.2d at 472 n.6 (quoting *In re Streets & Beard Farm P'ship*, 882 F.2d at 235). The Sixth Circuit questioned the conclusion in *Streets & Beard* that "delivery of a legal title is a mere formality and does not represent the kind of significant legal obligation that would render the contract executory." *Id*. (quoting *In re Streets & Beard Farm P'ship*, 882 F.2d at 235). Instead, the Sixth Circuit explained that "under Michigan law such a failure or inability to deliver title is a material breach which can excuse the vendee's continued performance and give rise to an action for recision or specific performance." *Id*.; *see also Chattanooga Mem'l Park v. Still (In re Jolly)*, 574 F.2d 349 (6th Cir. 1978) (the Sixth Circuit discusses a "functional approach" to defining executory contracts in a case involving an installment sale agreement which was breached by the debtor and reduced to judgment prior to the filing of his bankruptcy case; this approach is consistent with *Terrell* because an obligation to pay a court judgment translates to performance being due only on one side per the Countryman definition).

### 2. Executory Contracts under Ohio Common Law.

Although federal law determines the definition of executory contract for purposes of § 365, state law "'determine[s] whether one of the parties' failure to perform its remaining obligations would give rise to a "material breach" excusing performance by [the] other party.'" *In re Terrell*, 892 F.2d at 472 (quoting *Hall v. Perry (In re Cochise College Park, Inc.)*, 703 F.2d 1339, 1348 n.4 (9th Cir. 1983)); *see also Butner v. United States*, 440 U.S. 48, 54-55, 99 S. Ct. 914, 918 (1979) (state law determines property rights unless a federal purpose mandates otherwise). Therefore, the parties' rights under the Contract must be examined under Ohio law.

The interests of parties to land installment contracts governed by Ohio law are well-established. The land contract vendor holds legal title to the property and a "beneficial estate in the

lands to the extent of the unpaid purchase money." *Coggshal v. Marine Bank Co.*, 57 N.E. 1086, 1088 (Ohio 1900) (citing *Jaeger v. Hardy*, 27 N.E. 863 (Ohio 1891)); *Wood v. Donohue*, 736 N.E.2d 556, 559-60 (Ohio Ct. App. 1999). "[S]o long as any purchase money remains unpaid [the vendor] retains a personal right and interest in the land, and cannot be compelled to part with the title except upon full compliance by the purchaser with the terms of the contract." *Coggshal*, 57 N.E. at 1088. The vendee holds an "equitable estate in the land equal to the amount of the purchase money paid by him, and which, upon full payment, may ripen into a complete equity entitling him to conveyance of the legal title according to the terms of the contract." *Id.*; *see also Blue Ash Bldg. & Loan Co. v. Hahn*, 484 N.E.2d 186, 189 (Ohio Ct. App. 1984).

Thus, under Ohio common law, land installment contracts involve continuing, material obligations to be performed by the parties to the contract. Failure of the land contract vendor to transfer title when promised or failure of the land contract vendee to continue making installment payments would constitute a material breach of the contract, and would allow the other party to avoid continued performance. Accordingly, like their Michigan counterparts, land installment contracts governed by Ohio common law are executory under the Countryman definition.

B. The Ohio Statute.

The Debtor asserts that the executory nature of the Contract is altered by an Ohio statute, which supplements the common law where the land installment contract involves residential real property. *See* Ohio Rev. Code Ann. §§ 5313.01-.10. Under the statute, a "land installment contract" is defined as:

> an executory agreement which by its terms is not required to be fully performed by one or more of the parties to the agreement within one year of the date of the agreement and under which the vendor agrees to convey title in real property located in this state to the vendee and the vendee agrees to pay the purchase price in installment payments, while the vendor retains title to the property as security for the vendee's obligation.

*Id.* § 5313.01(A). Importantly, the fact that a land installment contract is subject to the statute does not change the parties' general rights with regard to title to the property – in fact, the "statutory language clearly describes the vendor's retention of legal title" pending the vendee's full payment

of the purchase price. *Wood*, 736 N.E.2d at 559. However, the statute may constrain the vendor's *remedies* upon breach of the contract by the vendee.

If the vendee defaults under a land installment contract that has been in effect for less than five years and under which less than twenty percent of the purchase price has been paid, *see* Ohio Rev. Code Ann. § 5313.07, the statute gives the vendor a right to forfeiture. *Id*. § 5313.08; *see Keene v. Schnetz*, 468 N.E.2d 125, 127 (Ohio Ct. App. 1983). The right to forfeiture may only be enforced after expiration of the thirty day cure and ten day notice periods prescribed by the statute. *See* Ohio Rev. Code Ann. §§ 5313.05, .06.

However, if the buyer (1) "has paid in accordance with the terms of the [land installment] contract for . . . five years or more from the date of the first payment," or (2) "has paid toward the purchase price a total sum equal to or in excess of twenty per cent thereof," the land installment contract vendor "may recover possession of his property only by use of a proceeding for foreclosure and judicial sale of the foreclosed property."[1] *Id*. § 5313.07. In such a foreclosure action, "as between the vendor and vendee, the vendor shall be entitled to proceeds of the sale up to and including the unpaid balance due on the land installment contract." *Id.* The foreclosure action "may be commenced after expiration of the [cure and notice periods] prescribed by sections 5313.05 and 5313.06." *Id*. The purpose of this provision is to protect land contract vendees from the loss of equity that would result from forfeiture of a contract under which the vendee has tendered substantial performance.[2] *See generally In re Coykendall*, 265 B.R. 859, 862 (Bankr. N.D. Ohio 2001).

---

[1] Foreclosure is not the only remedy available under the statute. The statute "does not prevent the vendor or vendee of a land installment contract from commencing a quiet title action to establish the validity of his claim to the property," from "bringing an action for unpaid installments," or from "cancelling [his] interest in a land installment contract." Ohio Rev. Code Ann. § 5313.07.

[2] Even under Ohio common law, the remedy of forfeiture is disfavored. *See Franklin Fin. Co. v. Bowden*, 172 N.E. 698, 698 (Ohio Ct. App. 1930) (It is a "well-established rule that a court of equity will not decree a forfeiture where it would be inequitable to do so, or where the vendee has made a substantial compliance with his contract.").

### 1. Does the Ohio Statute Apply in this Case?

Although it is undisputed that the Debtor has made the Contract payments to O'Brien for more than five years, the Appellants argue that Ohio Rev. Code § 5313 does not apply to the Contract. In support of this assertion, the Appellants claim that the Debtor, a limited liability company, is not a natural person and is therefore not a "vendee" under the statutory definition of the term. *See* Ohio Rev. Code Ann. § 5313.01(D). The Appellants further assert that the Ohio statute is inapplicable because the 82-unit apartment complex subject to the land installment contract should be viewed as commercial, rather than residential, property. *See id.* § 5313.01(B) (statute applies to real property located in Ohio which has been "improved by virtue of a dwelling having been erected" on it). Because the statute does not alter the executory nature of the Contract, the Panel will assume, *arguendo*, that the statute applies. It is unnecessary to address the Appellants' arguments to the contrary.

### 2. Does Application of the Ohio Statute Change the Executory Nature of the Contract?

The Debtor argues that Ohio Rev. Code § 5313.07 essentially transforms the otherwise executory Contract into a non-executory agreement. According to the Debtor, this transformation occurs because upon a potential breach of the Contract by the Debtor, O'Brien will not be entitled to regain possession of the Property via forfeiture, but will instead be forced to sell the Property at a foreclosure sale. Foreclosure would require O'Brien to transfer title of the Property, which the Debtor asserts "amounts to a statutory mandate to [O'Brien] to perform under the contract," thus depriving the Contract of its executory nature. This contention improperly focuses on the availability of particularly remedies for breach of the Contract – rather than the parties' unperformed obligations under the Contract – and is not supportable in light of the definition of executory contracts set forth in *Terrell*.

In the present case, as in *Terrell*, there are material obligations left to be performed by both parties to the Contract. As vendor, O'Brien holds legal title to the Property, and will be required to convey that title to the Debtor only when the Debtor completes payments under the Contract. This is a significant legal obligation – precisely the *same* remaining obligation as the vendor in *Terrell*.

For its part, the Debtor must also continue making payments and performing its other obligations under the Contract. The Debtor's failure to do so would constitute a material breach of the Contract. Under Ohio Rev. Code § 5313.07, although the Debtor's breach would not give O'Brien the right to forfeiture, many other remedies remain available, the exercise of which could excuse O'Brien from conveying legal title to the Debtor.

Because "the availability of the remedy of forfeiture" is "[a] key aspect of land contracts that distinguishes them from mortgages and other liens," elimination of a vendor's right to forfeiture under Ohio Rev. Code § 5313.07 may make land installment contracts subject to the statute appear more like security agreements and less like executory contracts. *See* Robert M. Curry & James Geoffrey Durham, *Ohio Land Contract Law*, 19 U. Dayton L. Rev. 563, 583 (1994). Indeed, prior to the Sixth Circuit's decision in *Terrell*, at least one Ohio bankruptcy court decision relied on the similarities between installment land contracts under § 5313.07 and security agreements. *In re Kratz*, 96 B.R. 127 (Bankr. S.D. Ohio 1988). It determined that a contract subject to § 5313.07 was non-executory. *Id.* at 129-30 ("Given [the statute's] procedural requirement[s], the vendee clearly acquires property rights in the contract land when twenty per cent of the total price has been paid. The nature of those property rights is analogous to those of an owner; while the vendors' rights in the property are analogous to a security interest which is decreasing in value as the price (debt) is paid down . . . . [W]here the vendee has paid more than twenty per cent of the contract price, an installment land contract is more appropriately characterized as a financing arrangement and not an executory contract."). However, *Terrell* specifically rejects the idea that the executory nature of a contract is determined by its resemblance to other types of financing arrangements. Instead, the proper focus of the inquiry is on the "unperformed obligations of the two parties or the legal effect of the failure to perform." *In re Terrell*, 892 F.2d at 472. Notwithstanding Ohio Rev. Code § 5313.07, O'Brien, as vendor under the Contract, continues to hold legal title to the Property. O'Brien will be required to convey legal title to the Debtor upon full payment of the contractual purchase price. The existence of the future obligation to convey legal title, and the fact that a material breach in performance by the Debtor would excuse O'Brien from performing this obligation, render the Contract executory under *Terrell*.

## V.    CONCLUSION

Accordingly, the bankruptcy court's conclusion that the Contract is not executory is REVERSED and REMANDED with instructions that the bankruptcy court consider the parties' bankruptcy rights and remedies under 11 U.S.C. § 365 together with other applicable provisions of the Bankruptcy Code.